

JUN 1 9 2014

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**VIRGINIA:**

### IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA RICHMOND

3:14CV446

NOIRE TURTON, suing individually, and as next friend of her minor son, K.T-J.; ALEXANDER MOTLEY, SR AND SANDRA MOTLEY, suing as next friends of their minor son, A.M.Jr.; SHARON CANNON, suing individually and as next friend of her minor son, C.C.; KALISHA JEFFERSON, suing individually and as next friend of her minor son, J.J.;JADA IBEKWE, suing as next friend of her minor son, B.I.; SHARON TROTTER, suing individually, and as next friend of her minor son, K.T. Jr.; KIAWANNA TROTTER, suing individually; LATRESCIA TIMMONS, suing as next friend of her minor daughter, L.T.; CHRISTY MILLER, suing individually, and as next friend of her minor son, M.M.; ANGELA TUCK, suing individually, and as next friend and guardian of her minor nephew, J.T.; PATTI AND PAUL MOSS, suing individually, and as next friends of their minor son,, T.M.; PATTI AND PAUL MOSS, suing individually, and as next friends of their minor son,, S.M.; BRANDY MILLER-GREEN, suing individually, and as next friend of her minor son, S.A.M.; LESLEY ANNE MATTHEWS, suing as next friend of her minor son, S.C.; ZOLANDRIA VEGA, suing in her individual capacity as guardian and Power of Attorney for her emancipated son, DEMETRIUS VEGA, an incapacitated individual; HEATHER AND OSCAR GONZALEZ, suing as next friends of their minor son, E.G.; MELISSA AND GENE DESIMONE, suing as next friends of their minor son, J.D.; BRIAN AND MARIA COPPLE, suing individually, and as next friends of their minor son B.C.; ASHLEY AND STEVE BRACKBILL, suing individually, and as next friends of their minor daughter, T.T.; TONIA B. DAVIS and DOUGLAS DAVIS, SR., suing as next friends and guardians and Power of Attorney for their emancipated son, DOUGLAS "DOOLEY" DAVIS, Jr. an incapacitated individual;

                                                **PLAINTIFFS,**

v.

The VIRGINIA DEPARTMENT OF EDUCATION; HENRICO COUNTY PUBLIC SCHOOLS; DR. PATRICK J. RUSSO, in his official capacity as Superintendant Henrico County Public Schools; HENRICO COUNTY SCHOOL BOARD; BONDY SHAY GIBSON, in her official capacity as **Assistant Superintendant Exceptional Education and Research & Planning Henrico County Public Schools**; JAN PARRISH, in her official capacity as **Social Work Supervisor for Henrico County Public Schools**; ARTHUR G. RAYMOND, III, individually, and in his official capacity as **Principal of George H. Moody Middle School**; MICHAEL WRIGHT in his official capacity as **Principal of Highland Springs High School**; TRACEY SEAMSTER, individually, and in her official capacity as **Principal of Sandston Elementary School**; DR. ANDREW ARMSTRONG, in his official capacity as **Principal of John Rolfe Middle School**, and in his official capacity as **Principal of Hermitage High School**; KIM TAYLOR, individually and in his official capacity as a **teacher at John Rolfe Middle School**; FELICIA R. BURKHALTER in her official

capacity as **Principal of Ratcliffe Elementary; TRACI OMOHUNDRO** in her official capacity as **Principal of Varina High School; CHERI L. GUEMPEL** in her official capacity as **Principal of Elko Middle School; KAREN RAWLYK** in her official capacity as **Principal of Crestview Elementary School; CHESTERFIELD COUNTY PUBLIC SCHOOLS; DR. MARCUS J. NEWSOME,** in his official capacity as Superintendant of Chesterfield County Public Schools; **CHESTERFIELD COUNTY SCHOOL BOARD; MARY ROBINSON** in her official capacity as **Principal of Swift Creek Middle School; CAROL LEWELLYN** in her official capacity as **Principal of Salem Church  Elementary School; RACHEL E. FOGLESONG** in her official capacity as **Principal at A.M. Davis Elementary School; ESSEX COUNTY PUBLIC SCHOOLS; ESSEX COUNTY SCHOOL BOARD; SCOTT A. BURCKBUCHLER,** Superintendant for **Essex County Public Schools; ANDREA ROANE,** in her capacity as **Principal of Essex Intermediate School; TAMMY PAYNE** individually and in her official capacity as a teacher at **Essex Intermediate School; W. REYNOLDS** individually and in her official capacity as a teacher at **Essex Intermediate School; NOTTOWAY COUNTY PUBLIC SCHOOLS; NOTTOWAY COUNTY SCHOOL BOARD; DANIEL GROUNARD,** Superintendant for **Nottoway County Public Schools; ANNE STINSON,** in her official capacity as **Principal of Nottoway County High School; ROBERT HINES,** individually, and in his official capacity as a teacher at **Nottoway County High School; KATHLEEN S. MEHFOUD, ESQUIRE,** of ReedSmith, LLP, individually, and in her official capacity as counsel for local school districts in Central Virginia, including Henrico County Public Schools, Chesterfield County Public Schools, Essex County Public Schools and Nottoway County Public Schools; and **PATRICK T. ANDRIANO, Esquire** of ReedSmith, LLP, individually, and in his official capacity as counsel for local school districts in Central Virginia, including Henrico County Public Schools, Chesterfield County Public Schools, Essex County Public Schools and Nottoway County Public Schools.

**DEFENDANTS.**

## COMPLAINT

COMES NOW, the plaintiffs, by and through counsel, and move this Court for Injunctive Relief, an Order requiring the defendant's to comply with Federal law regarding the Individuals with Disability Act (IDEA), and it's corresponding federal and state regulations and policies, and the Regulations Governing Special Education Programs for Children with Disabilities in Virginia, and monetary damages against the defendants, and state as reasons for the Complaint the following:

## INTRODUCTION

### (Federal and State Law Governing Special Education)

1. The Individuals with Disabilities Education Act (hereinafter "IDEA") and Virginia's special education laws require all schools in a state receiving federal funds for education to ensure that all identified students with disabilities have the right to a free appropriate public education (hereinafter "FAPE"). A FAPE is provided at public expense, under public supervision and direction, and without charge; it must meet the standards of the Virginia Board of Education, include an appropriate pre-school, elementary school, middle school or secondary education in the state, and is provided in keeping with an Individualized Education Plan (hereinafter "IEP"). In accordance with 20 U.S.C. §1400(d)(1)(A), a FAPE emphasizes special education and related services *specifically* designed to meet students with special needs and unique needs, to permit them to benefit from instruction, and to prepare them for further education, employment, and independent living.

2. An appropriate IEP must contain statements concerning a disabled student's level of functioning, set forth in measurable annual achievement goals, describe the services to be provided, and establish objective criteria for evaluating the student's progress.  Further, every IEP is required to be prepared by an IEP team, which team consists of at least one representative from the school district, the student's teacher, the student's parents or guardians and, where appropriate, the student himself.

**(Federal Law Governing the Due Process & Equal Protection Clauses of the 14th Amendment to the United States Constitution)**

3. The Equal Protection Clause and Due Process Clause of the 14th Amendment provides in pertinent part that no State shall deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law.

**(Section 504 of the Rehabilitation Act of 1973)**

4. Section 504 of the Rehabilitation Act of 1973 is a national law that protects qualified individuals from discrimination based on their disability.  Section 504 forbids organizations and employers from excluding or denying individuals with disabilities an equal opportunity to receive program benefits and services. It defines the rights of individuals with disabilities to participate in, and have access to program benefits and services.

**(Federal Law Governing the Americans with Disabilities Act)**

5. The Americans with Disabilities Act gives civil rights protections to individuals with disabilities similar to those provided to individuals on the

basis of race, color, sex, national origin, age, and religion. It guarantees equal opportunity for individuals with disabilities in public accommodations, employment, transportation, State and local government services, and telecommunications.

### (42 U.S.C. §1983 Actions)

6. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

### (Virginia Code 22.1-214 E.)

7. Whenever the Board of Education, in its discretion, determines that a school division fails to establish and maintain programs of free and appropriate public education which comply with regulations established by the Board, the Board may withhold all special education moneys from the school division and may use the payments which would have been available to such school division to provide special education, directly or by contract, to eligible children with disabilities in such manner as the Board considers appropriate.

### (Negligence, Gross Negligence and Reckless Disregard – Breach Of Duty Arising From Special Relationship)

8. Based upon the factual circumstances of each individual plaintiff, all defendants herein stood in a special relationship to the plaintiffs, who have all been identified as

special education students (hereinafter "SPED") with IEP's in need of special assistance and protection from foreseeable dangers.

9. In the case of the student plaintiffs who were bullied, and/or assaulted by other students, teachers, or administrators, the relevant defendants failed in their duty to protect the student plaintiff's from foreseeable harm.

10. Based upon the special needs of each student plaintiff who was qualified for and received an IEP, the defendant administrators in signing the students IEP as part of the IEP team entered into a contractual obligation to provide services to the plaintiffs in compliance with federal and state law under IDEA and FAPE.

### (Breach of Contract)

11. The defendant administrators, in failing to ensure that they, their staff and other administrators adhered to the SPED student's IEP's, breached the IEP contract they entered into with the parents of the student plaintiffs to provide the students with a free and appropriate education in the least restrictive environment.

### THE PARTIES

12. At all times relevant to the allegations in this Complaint, the defendant, VIRGINIA DEPARTMENT OF EDUCATION (hereinafter "VDOE") was the state entity charged with supervision and oversight of the school divisions within the Commonwealth of Virginia, including the defendant school divisions to, among other things, ensure compliance with special education laws and to prepare and supervise the implementation by each school division of a program of special education designed to educate and train children with disabilities in accordance with the Individuals with Disabilities Education Act.

6

13. At all times relevant to the allegations in this Complaint, the Defendant, HENRICO COUNTY PUBLIC SCHOOLS (hereinafter "HCPS") in Virginia had the duty of ensuring an inclusive, non-discriminatory educational program which provided each school aged child with opportunities for learning experiences commensurate with his age and ability, and ensuring that all children with disabilities had available to them a free appropriate public education (hereinafter "FAPE") that emphasized special education related services designed to meet their unique needs and prepare them for further education, employment, and independent living in the least restrictive environment.

14. At all times relevant to the allegations in this Complaint, the HENRICO COUNTY SCHOOL BOARD (hereinafter "HCSB)  was a public corporation in Virginia which has the duty to hire and supervise the HCPS school superintendant, and to set educational policy and ensure that the educational system of Henrico County protects the rights of handicapped students to a FAPE, pursuant to federal and state law, and local regulations.

15. At all times relevant to the allegations in this Complaint, defendant, PATRICK J. RUSSO (hereinafter "Russo") was the Superintendant of the Henrico County Public School System and was responsible for administration of educational services in the Henrico County Public Schools, as well as ensuring that principals and teachers under his supervision provided handicapped students with a FAPE as required by federal and state law.

16. At all times relevant to the allegations in this Complaint, defendant, BONDY SHAY GIBSON (hereinafter "Gibson") was the Assistant Superintendant of Exceptional Education and Research and Planning in Henrico County Public Schools, and was responsible for implementing the IDEA within the Henrico County Public School

7

System and ensuring that the school divisions met the program requirements under Part B of the act with a particular emphasis on those requirements that are most closely related to implementing and improving educational results for children with disabilities. In addition, Gibson had the duty to see that the school systems within Henrico County were providing students with a FAPE.

17. At all times relevant to the allegations in this Complaint, defendant, JAN PARRISH (hereinafter "Parrish") was employed as the Social Work Supervisor for Henrico County Public Schools and was responsible for many things, including working with SPED students and their families in a number of capacities to help these SPED students achieve their educational potential, and attain maximum benefit from free and appropriate public school programs.

18. At all times relevant to the allegations in this Complaint, defendant, ARTHUR G. RAYMOND, III (hereinafter "Raymond") was employed as the principal at GEORGE H. MOODY MIDDLE SCHOOL (hereinafter "Moody") in Henrico County, Virginia, and as such, was responsible for overseeing the administration of Moody, the safety of the students who attended Moody, supervising the teachers and staff at Moody, and seeing that handicapped students at Moody were afforded their rights to a FAPE under federal and state law.

19. At all times relevant to the allegations in this Complaint, defendant, MICHAEL WRIGHT (hereinafter "Wright") was the principal at HIGHLAND SPRINGS HIGH SCHOOL (hereinafter "Highland Springs") in Henrico County, Virginia and as such, was responsible for overseeing the administration of Highland Springs, the safety of the students who attended Highland Springs, supervising the teachers and staff at Highland Springs, and seeing that handicapped students at Highland Springs were afforded their rights to a FAPE under federal and state law.

20. At all times relevant to the allegations in this Complaint, defendant, TRACY
SEAMSTER (hereinafter "Seamster") was the Principal of SANDSTON
ELEMENTARY SCHOOL (hereinafter "Sandston") in Henrico County, Virginia and
as such was responsible for overseeing the administration of Sandston, the safety of
the students at Sandston, supervising the teachers and staff at Sandston, and seeing
that handicapped students at Sandston were afforded their rights to FAPE under
federal and state law.

21. At all times relevant to the allegations in this Complaint, defendant, DR. ANDREW
ARMSTRONG (hereinafter "Armstrong")  was at relevant times, the Principal of
JOHN ROLFE MIDDLE SCHOOL (hereinafter "Rolfe") and HERMITAGE HIGH
SCHOOL (hereinafter "Hermitage"), both in Henrico County, Virginia, and as such
was responsible for overseeing the administration of Rolfe) and Hermitage, the safety
of the students at Rolfe and Hermitage, supervising the teachers and staff at Rolfe
and Hermitage, and seeing that handicapped students at Rolfe and Hermitage were
afforded their rights to FAPE under federal and state law.

22. At all times relevant to the allegations in this Complaint, defendant, KIM TAYLOR
(hereinafter "Taylor") was a teacher at JOHN ROLFE MIDDLE SCHOOL
(hereinafter "Rolfe") and was Plaintiff, L.T.'s teacher during relevant time periods
and as such was responsible for the daily delivery of a free and appropriate public
education services to L.T., a SPED student.

23. At all times relevant to the allegations in this Complaint, defendant, FELICIA R.
BURKHALTER (hereinafter "Burkhalter") was the Principal of RATCLIFFE
ELEMENTARY in Henrico County, Virginia, and as such was responsible for
overseeing the administration of Ratcliffe, the safety of the students at Ratcliffe,

supervising the teachers and staff at Ratcliffe, and seeing that handicapped students at

Ratcliffe were afforded their rights to FAPE under federal and state law. The

24. At all times relevant to the allegations in this Complaint, defendant, TRACI

OMOHUNDRO (hereinafter "Omohundro") was the Principal of VARINA HIGH

SCHOOL (hereinafter "Varina") in Henrico County, Virginia, and as such was

responsible for overseeing the administration of Varina, the safety of the students at

Varina, supervising the teachers and staff at Varina, and seeing that handicapped

students at Varina were afforded their rights to FAPE under federal and state law.

25. At all times relevant to the allegations in this Complaint, defendant, CHERI L.

GUEMPEL (hereinafter "Guempel") was the Principal of ELKO MIDDLE SCHOOL

(hereinafter "Elko") in Henrico County, Virginia, and as such was responsible for

overseeing the administration of Elko, the safety of the students at Elko, supervising

the teachers and staff at Elko, and seeing that handicapped students at Elko were

afforded their rights to FAPE under federal and state law.

26. At all times relevant to the allegations in this Complaint, defendant, KAREN

RAWLYK (hereinafter "Rawlyk") was the Principal of CRESTVIEW

ELEMENTARY SCHOOL (hereinafter "Crestview") in Henrico County, and as such

was responsible for overseeing the administration of Crestview, the safety of the

students at Crestview, supervising the teachers and staff at Crestview, and seeing that

handicapped students at Crestview were afforded their rights to FAPE under federal

and state law.

27. At all times relevant to the allegations in this Complaint, defendant, DR. MARCUS J.

NEWSOME (hereinafter "Newsome") was the Superintendant of the

CHESTERFIELD COUNTY PUBLIC SCHOOLS (hereinafter "CCPS") and was

responsible for administration of educational services in the Chesterfield County

Public Schools (hereinafter "CCPS"), as well as had the duty to see that principals

and teachers under his supervision provide handicapped students with a FAPE as

required by federal and state law.

28. At all times relevant to the allegations in this Complaint, defendant, the Chesterfield

County School Board (hereinafter "CCSB") was a public corporation which has the

duty to set educational policy and to ensure that the educational system of

Chesterfield County protects the rights of handicapped students to a FAPE, pursuant

to federal and state law, and local regulations.

29. At all times relevant to the allegations in this Complaint, defendant, MARY

ROBINSON (hereinafter "Robinson") was the Principal of SWIFT CREEK

MIDDLE SCHOOL ("Swift Creek") in Chesterfield County, Virginia, and as such

was responsible for overseeing the administration of Swift Creek , the safety of the

students at Swift Creek, supervising the teachers and staff at Swift Creek, and seeing

that handicapped students at Swift Creek were afforded their rights to FAPE under

federal and state law.

30. At all times relevant to the allegations in this Complaint, defendant, CAROLINE

LEWELLYN (hereinafter "Lewellyn") was the Principal of SALEM CHURCH

ELEMENTARY SCHOOL (hereinafter "Salem")  in Chesterfield County, Virginia,

and as such was responsible for overseeing the administration of Salem, the safety of

the students at Salem, supervising the teachers and staff at Salem, and seeing that

handicapped students at Salem were afforded their rights to FAPE under federal and

state law.

31. At all times relevant to the allegations in this Complaint, defendant, RACHEL E.

FOGLESONG (hereinafter "Foglesong") was the Principal of A.M. DAVIS

ELEMENTARY SCHOOL (hereinafter "Davis") in Chesterfield County, Virginia,

and as such was responsible for overseeing the administration of Davis, the safety of the students at Davis, supervising the teachers and staff at Davis, and seeing that handicapped students at Davis were afforded their rights to FAPE under federal and state law.

32. At all times relevant to the allegations in this Complaint, defendant, the ESSEX COUNTY SCHOOL BOARD (hereinafter "ECSB") was a public corporation which had the duty to set educational policy and ensure that the educational system of Essex County protected the rights of handicapped students to a FAPE, pursuant to federal and state law, and local regulations.

33. At all times relevant to the allegations in this Complaint, defendant, SCOTT A. BURCKBUCHLER was the Superintendent of the Essex County Public Schools and was responsible for administration of educational services in the Essex County Public Schools (hereinafter "ECPS"), as well as had the duty to see that principals and teachers under his supervision provided handicapped students with a FAPE as required by federal and state law.

34. At all times relevant to the allegations in this Complaint, defendant, ANDREA ROANE (hereinafter "Roane") was the Principal of Essex Intermediate School, and as such was responsible for overseeing the administration of Essex Intermediate School (hereinafter "Essex"), the safety of the students at Essex, supervising the teachers and staff at Essex and seeing that handicapped students at Essex were afforded their rights to FAPE under federal and state law.

35. At all times relevant to the allegations in this Complaint, defendant, TAMMY PAYNE was a teacher at Essex and was plaintiff, T.T.'s teacher during relevant time periods and as such was responsible for the daily delivery of a free and appropriate public education services to T.T.

36. At all times relevant to the allegations in this Complaint, defendant, W. REYNOLDS was a teacher at Essex and was plaintiff, T.T's teacher during relevant time periods and as such was responsible for the daily delivery of a free and appropriate public education services to T.T.

37. At all times relevant to this Complaint, The NOTTOWAY COUNTY SCHOOL BOARD (hereinafter "NCSB") was a public corporation which had the duty to set educational policy and ensure that the educational system of Nottoway County protected the rights of handicapped students to a FAPE, pursuant to federal and state law, and local regulations.

38. At all times relevant to the allegations in this Complaint, defendant, DANIEL GROUNARD was the Superintendant of Nottoway County Public Schools and was responsible for administration of educational services in the Nottoway County Public Schools (hereinafter "NCPS"), as well as had the duty to see that principals and teachers under his supervision provided handicapped students with a FAPE as required by federal and state law.

39. At all times relevant to the allegations in this Complaint, defendant, ANNE STINSON (hereinafter "Stinson") was the Principal of NOTTOWAY COUNTY HIGH SCHOOL (hereinafter "Nottoway"), and as such is responsible for overseeing the administration of Nottoway, the safety of the students at Nottoway, supervising the teachers and staff at Nottoway and seeing that handicapped students at Nottoway are afforded their rights to FAPE under federal and state law.

40. At all times relevant to the allegations in this Complaint, defendant, ROBERT HINES was a teacher at Nottoway and was plaintiff, Douglas Davis, Jr.'s teacher during relevant time periods and as such was responsible for the daily delivery of a free and appropriate public education services to Dooley.

41. The Defendant, KATHLEEN S. MEHFOUD, ESQUIRE (hereinafter "Mehfoud") is an attorney with the law firm of ReedSmith, LLP, in Richmond, Virginia, and at all times relevant to this Complaint, advised and represented schools and school employees in Henrico County, Chesterfield County, Essex County, and other surrounding counties in Virginia regarding their obligations to meet the needs of students with disabilities under FAPE and IDEA. In this capacity, Mehfoud attended IEP and other meetings involving one or more of the SPED students as counsel of record for the school.

42. The Defendant, PATRICK T. ANDRIANO, ESQUIRE (hereinafter "Andriano") is an attorney with the law firm of ReedSmith, LLP, in Richmond, Virginia, and at all times relevant to this Complaint, advised and represented schools and school employees in Henrico County, Chesterfield County, Essex County, and other surrounding counties in Virginia regarding their obligations to meet the needs of students with disabilities under FAPE and IDEA. In this capacity, Andriano attended IEP and other meetings involving one or more of the plaintiff SPED students as counsel of record for the school.

## VENUE

43. Jurisdiction over plaintiffs' federal claims is based on 28 U.S.C. §1331 (federal question jurisdiction), 20 U.S.C. §1400(d)(1)(A); 28 U.S.C. §1343(3) and §1343(4) (violation of civil rights); 42 U.S.C. §1983 (violation of federal constitutional or statutory right); 504 of the Rehabilitation Act of 1973 and 42 U.S.C. §12101 et seq. (violation of disability laws); and the Due Process & Equal Protection Clauses of the 14th Amendment (violations of equal protection of the law). Plaintiff's state law claims are brought in this Court pursuant to 28 U.S.C. §1367 (supplemental jurisdiction). Venue is proper in this District and Division, as it is the situs of the parties and of the events complained of herein.

14

## ALLEGATIONS RELATED TO ALL STUDENTS

### COUNT 1

**(Violations of Federal and State Special Education laws by defendant VDOE)**

44. Plaintiffs allege that the defendant, VDOE has allowed the defendant school divisions and other school divisions within its supervision and control to continually and without intervention engage in violations of the Due Process and Equal Protection Clauses of the 14th Amendment to the United States Constitution by systematically violating the rights of African American students, particularly African American male students, as well as students with disabilities in that these students in all jurisdictions within the purview and under the control and supervision of the VDOE are suspended, expelled or arrested for school related infractions in such disproportionate numbers to their white and non-disabled counterparts that these students are routinely and repeatedly funneled into a school to dropout to prison pipeline without the benefit of appropriate due process proceedings.

45. Plaintiffs allege that the defendant, VDOE, in addition to allowing the defendant school divisions and other school divisions under its control and supervision to effectively exclude African American and students with disabilities from the public school system, VDOE has also allowed these same students to be warehoused in special classes that do not meet their educational needs, are not in compliance with their IEP services and goals, and/or allow the defendant school divisions to neglectfully shepherd these African American and special needs students through the system until their parents or guardians are frustrated enough to remove them from the school system and

make alternative arrangements for their education, or until the students themselves are old enough to age out of the school system, or discouraged enough to drop out, whichever event occurs first.

46. Plaintiffs further allege that despite receiving millions of dollars each year in federal funds allocated for the education of SPED students, the defendant, VDOE has been negligent and subsequently failed in implementing the primary focus under IDEA; to adequately monitor the activities of the school divisions in Virginia, including the defendant school divisions, to ensure improvement of educational results and functional outcomes for all children with disabilities and ensuring that schools and local agencies meet the program requirements under Part B of the Act with particular emphasis on requirements that are most closely related to improving educational results for children with disabilities.

47. Plaintiff's additionally allege that the defendant, VDOE has routinely and habitually failed to provide adequate and/or appropriate staffing for special needs students in a gross, willful and wanton violation of their duties to provide such students with a free and appropriate public education that meets their needs in the least restrictive environment.

48. Plaintiffs allege that the Dispute Resolution and Administrative Services Office (hereinafter "DRAS") of the VDOE, which has the responsibility of managing and monitoring a due process hearing system to impartially resolve disagreements over issues related to special education services between parents and the school division, has failed in its primary duty in that it has

designed a system that is so biased, convoluted and difficult to navigate that

parents often lose their rights to a due process hearing because, 1) of their

inability to follow the oftentimes confusing steps necessary to obtain a due

process hearing, 2) they fail to complete one or more of the required steps for

filing a complaint in a timely manner, or 3) they simply forego their rights to a

hearing out of frustration with a system designed to never see a parent with a

viable issue reach an impartial conclusion.

49. Plaintiff's further allege that those matters that ultimately reach the Due

Process hearing stage are more often dismissed than not, despite oftentimes

overwhelming evidence presented by parents of violations under IDEA and

FAPE, or lack of evidence presented by the school system.

50. Plaintiffs allege that the due process hearing system promulgated by the

DRAS under the direction of the VDOE fails to the meet the requirements of

IDEA and FAPE, in that it is not structured to provide the necessary impartial

procedure needed to resolve disputes between parents and school divisions

regarding whether or not the school or school division is meeting the needs of

SPED students under IDEA and FAPE.

51. By the time parents of SPED students who believe the school or school

system is failing their child navigate their way through the convoluted and

arduous VDOE due process system, their SPED child has spent one or more

school years without appropriate and necessary educational services, and has

languished in either an inappropriate educational warehousing system or a

home-based program where they are being denied a free and appropriate public education in the least restrictive environment.

## COUNT 2

52. Plaintiff herein incorporates by reference the above listed paragraphs;

53. Plaintiffs file this suit alleging that defendant, schools, administrators, and teachers acting under color of authority have routinely, consistently, and habitually over several years, as far back as the 2009-2010 school year up to and including the 2011-2012, 2012-2013 and 2013-2014 school years, violated IDEA and corresponding federal regulations, state laws, regulations, and policies, including the Code of Virginia, §22.1-214, E. and the Regulations Governing Special Education Programs for Children with Disabilities in Virginia.

54. In addition, during the 2011-2012, 2012-2013 and 2013-2014 school years, defendants, jointly and severally have routinely and consistently, grossly, willfully and wantonly violated Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act (hereinafter "ADA"), as well as engaged in gross, willful and wanton violations of 42 U.S.C. §1983 for failing to provide proper accommodations and services, and participating in and/or allowing the abuse and neglect of students with disabilities.

55. Further, during the 2011-2012, 2012-2013 and including the 2013-2014 school years, the defendants, in allowing SPED students to be bullied by peers, teachers, and in some cases administrators, without intervention despite the fact that they knew, or should have known, engaged in actions that

amounted to negligence, gross negligence, and were in reckless and willful disregard of the safety of the SPED students under their care and supervision.

## COUNT 3

**(Violations of Federal and State Special Education Laws by Henrico County Public Schools and Henrico County Public School Officials)**

56. Plaintiff herein incorporates by reference the above listed paragraphs;

57. At all times referenced in this Complaint, defendants Russo, Gibson and Parrish failed to ensure, and grossly neglected their duties to provide SPED students in HCPS with an inclusive, non-discriminatory educational program that assured them a free appropriate public education in the least restrictive environment, that emphasized special education related services designed to meet their unique needs and prepare them for further education, employment, and independent living.

58. Under the leadership of Russo, Gibson and Parrish, the Henrico County Public School System for several years, up to and including the 2010-2011, 2011-2012, 2012-2013, and 2013-2014 school years, has systematically, routinely and habitually violated the rights of African American students and students with special needs by denying them services and accommodations necessary to meet the requirements of IDEA and FAPE, discriminating against them in violation of the ADA, and the Due Process and Equal Protection Clauses of the 14th Amendment, and by engaging in violations of the plaintiff's civil rights under 42 U.S.C. 1983 by:

a. Failing to provide SPED students with a free and appropriate public education in the least restrictive environment;

b. Failing to provide SPED students with a private placement recommendation when the school has failed to, and cannot provide a free and appropriate public education in the least restrictive environment;

c. Failing to provide adequate and/or appropriate staffing for SPED students in a gross, willful and wanton violation of their duties to provide such students with a free and appropriate public education, including, negligently hiring, training, retaining and supervising teachers, educators and administrators who are not qualified to teach students with special needs or oversee the teaching of students with special needs;

d. Failing to properly ensure that administrators and educators are made aware of and/or adhere to SPED student IEP's;

e. Failing to provide SPED students with an IEP that meets the requirements of FAPE; including, failing to provide SPED students appropriate and necessary accommodations as outlined by their IEP's, and failing to accept responsibility for the costs and expenses of necessary services for SPED students who meet the requirements for such;

f. Failing to include parents and/or guardians as members of the IEP decision making team;

g. Refusing to provide parents with evaluations, student records, and/or student data prior to, or during IEP meetings, thereby adversely affecting parents ability to understand and participate in making informed decisions regarding their SPED student's placement needs and effectively excluding them as members of the IEP team for their SPED student;

h. Misrepresenting to parents that IEP team decisions regarding SPED students needs and progress were dictated by data that was never collected in accordance with IEP requirements, and/or the data which did exist did not substantiate the progress reports or suggested goal recommendations made by the IEP team;

i. Banning parents and advocates of SPED students from school property as a way of silencing them without the benefit of a due process hearing, and generally creating a hostile and fearful environment for those parents, caretakers and SPED advocates who are vocal about the ongoing violations of federal law within the school system;

j. Maliciously prosecuting parents and students to force them to accept IEP team recommendations that are sometimes contrary to treating physicians orders, or that don't account for parent concerns for their SPED child by filing unwarranted criminal charges against parents and students;

k. Failing to allow parents the advocates of their choosing to assist with the development of their child's IEP as required under FAPE.

l.   Conspiring to deprive SPED students of appropriate educational

services;

m.   Failing to follow federal guidelines for meeting and changing  SPED

student's classroom settings and/or school placements that are outlined

in the students IEP;

n.   Failing to follow federal guidelines and ignoring IEP requirements for

disciplining, suspending and/or expelling SPED students;

o.   Disproportionately suspending and expelling African American

students and SPED students;

p.   Fraudulently mischaracterizing discipline in SPED student records

when the SPED student was suspended in violation of the

requirements of their IEPs and/or federal law;

q.   Failing to protect SPED students from bullying by peers, and abuse

and neglect by teachers.

## COUNT 4

**(Violations of Federal and State Special Education Laws by Chesterfield County**

**Public Schools and Chesterfield County Public School Officials)**

59. Plaintiff herein incorporates by reference the above listed paragraphs;

60. At all times referenced in this Complaint, defendant Newsome failed to

ensure, and grossly neglected his duty to provide SPED students in CCPS with an

inclusive, non-discriminatory educational program that assured them a free

appropriate public education in the least restrictive environment, that

emphasized special education related services designed to meet their unique

needs and prepare them for further education, employment, and independent living.

61. Under the leadership of Newsome, the Chesterfield County Public School System for several years, up to and including the 2010-2011, 2011-2012, 2012-2013 and 2013-2014 school years, has systematically and routinely violated the rights of students with special needs by denying them services and accommodations necessary to meet the requirements of FAPE by:

a. Failing to provide SPED students with a free and appropriate public education in the least restrictive environment;

b. Failing to provide SPED students with a private placement recommendation when the school has failed to, and cannot provide a free and appropriate public education in the least restrictive environment;

c. Failing to provide adequate and/or appropriate staffing for SPED students in a gross, willful and wanton violation of their duties to provide such students with a free and appropriate public education, including, negligently hiring, training, retaining and supervising teachers, educators and administrators who are not qualified to teach students with special needs or oversee the teaching of students with special needs;

d. Failing to properly ensure that administrators and educators are made aware of and/or adhere to SPED student IEP's;

e. Failing to provide SPED students with an IEP that meets the requirements of FAPE; including, failing to provide SPED students appropriate and necessary accommodations as outlined by their IEP's, and failing to accept

23

responsibility for the costs and expenses of necessary services for SPED
students who meet the requirements for such;

f.  Failing to include parents and/or guardians as members of the IEP
decision making team;

g.  Refusing to provide parents with evaluations, student records, and/or
student data prior to, or during IEP meetings, thereby adversely affecting
parents ability to understand and participate in making informed decisions
regarding their SPED student's placement needs;

h.  Misrepresenting to parents that IEP team decisions (excepting parent)
regarding SPED students needs and progress were dictated by data that
was never collected in accordance with IEP requirements, when, in fact,
no such data existed, or the data which did exist did not substantiate the
progress reports or suggested goal recommendations made by the IEP
team;

i.  Banning parents and advocates of SPED students from school property
without the benefit of a due process hearing, and generally creating a
hostile and fearful environment for those parents, caretakers and SPED
advocates who are vocal about the ongoing violations of federal law
within the school system;

j.  Failing to allow parents the advocates of their choosing to assist with the
development of their child's IEP as required under FAPE;

k.  Conspiring to deprive SPED students of appropriate educational services;

l.   Failing to follow federal guidelines for meeting and changing  SPED

student's classroom settings and/or school placements that are outlined in

the students IEP;

m.  Failing to follow federal guidelines and ignoring IEP requirements for

disciplining, suspending and/or expelling SPED students;

n.   Fraudulently mischaracterizing discipline in SPED student records when

the SPED student was suspended in violation of the requirements of their

IEPs and/or federal law;

o.   Failing to protect SPED students from bullying by peers, and abuse and

neglect by teachers.

## COUNT 5

**(Violations of Federal and State Special Education Laws by Essex County Public**

**Schools and Essex County Public School Officials)**

62. Plaintiff herein incorporates by reference the above listed paragraphs;

63. Under the leadership of Burckbuchler, the Essex County Intermediate School

during the 2011-2012 and 2012-2013 school year, violated the rights of

students with special needs by denying services and accommodations

necessary to meet the requirements of FAPE by:

a.   Failing to provide adequate and/or appropriate staffing for a SPED student

in a gross, willful and wanton violation of their duties to provide such

students with a free and appropriate public education, including,

negligently hiring, training, retaining and supervising teachers, educators

and administrators who are not qualified to teach students with special

needs or oversee the teaching of students with special needs;

b.  Failing to properly ensure that administrators and educators were made

aware of and adhered to a SPED student's IEP;

c.  Failing to correct, instruct or appropriately discipline teaching staff who

refused to abide by and ignored certain requirements of a SPED student's

IEP;

d.  Failing to protect a SPED student from bullying by peers, and abuse and

neglect by teachers;

e.  Unfairly and unjustifiably disciplining a SPED student in a manner which

is inconsistent with federal and state laws;

## COUNT 6

**(Violations of Federal and State Special Education Laws by Nottoway County**

**Public Schools and Nottoway County Public School Officials)**

64. Plaintiff herein incorporates by reference the above listed paragraphs;

65. Under the leadership of Grounard, Nottoway County High School during the

2012-2013 school year, routinely violated the rights of students with special

needs by denying services and accommodations necessary to meet the

requirements of FAPE by:

a.  Failing to provide adequate and/or appropriate staffing for SPED students

in a gross, willful and wanton violation of their duties to provide such

students with a free and appropriate public education, including,

negligently hiring, training, retaining and supervising teachers, educators

and administrators who are not qualified to teach students with special needs or oversee the teaching of students with special needs;

b.  Failing to properly ensure that administrators and educators were made aware of and adhered to a SPED student's IEP;

c.  Failing to correct, instruct or appropriately discipline teaching staff who refused to abide by and ignored certain requirements of a SPED student's IEP;

d.  Failing to protect a SPED student from abuse and neglect by a teacher;

## COUNT 7

### (Violations of Federal and State Special Education Laws by ReedSmith Attorneys, Kathleen Mehfoud and Patrick Andriano)

66. Plaintiff herein incorporates by reference the above listed paragraphs;

67. Plaintiffs allege that attorneys Mehfoud and Andriano were present in many IEP meetings in Henrico and Chesterfield Counties wherein they advised school officials to violate federal and state special education laws by:

a.  denying parents access to their child's school records and/or advising school officials not to provide copies of student records;

b.  banning parents and their advocates from IEP meetings without the benefit of due process, and threatening criminal prosecution for those parents or advocates wanting to participate in the IEP process, but who were illegally banned;

c.  advising school officials to conduct IEP meetings when parents had advised they could not be present at the meeting, but were not waiving their right to be present;

d.  advising school officials that it was appropriate to bring criminal charges, including truancy, contributing to the delinquency of a minor and CHINS petitions against parents who were a) vocal about the violation of their federal education rights; b) who temporarily removed their children from school out of fear for their safety when school officials failed to address parental concerns in IEP meetings of peer and/or teacher bullying; c) concerned about the assignment of educators to their SPED students who were not trained in handling their child's special needs; and/or d) teacher retaliation against their SPED student;

e.  Mehfoud and Andriano bullied parents into signing IEP's and/or agreeing to terms contained within their child's IEP the parents felt were not in their child's best interest or inconsistent with doctor recommendations for the child's educational needs;

f.  Mehfoud and Andriano summarily dismissed legitimate parental concerns regarding their SPED students, and in some cases advised school officials to ignore treating physician recommendations for the special needs of the SPED students;

g.  Mehfoud and Andriano effectively inserted themselves as members of the IEP team, oftentimes making decisions on behalf of the school officials, overruling the parents objections to services without justification, not

allowing the parents to actively participate in IEP meetings or express their concerns about the nature of the process, or the services being provided to their child, and generally creating an atmosphere for parents of SPED students in the context of IEP meetings that was so hostile that parents were oftentimes afraid to participate, confused about the process, and left feeling as if they had no say in their child's education.

## ALLEGATIONS RELATED TO SPECIFIC STUDENTS

## COUNT 8

### (Plaintiff K.T-J)

68. Plaintiff herein incorporates by reference the above listed paragraphs;

69. The Plaintiff, NOIRE TURTON is a resident of Henrico County, Virginia and the mother of K.T-J, a school age child who previously attended an Henrico County Public School, and who has a learning disability and is a handicapped individual as defined by federal and state laws. At all times relevant to the allegations in this Complaint, K.T-J was a student with an Individualized Education Plan (hereinafter "IEP");

    a. K.T-J has been diagnosed with Autism, a developmental disability that significantly affects his verbal and nonverbal communication and social interaction. In addition, K.T-J also has a secondary disability of speech or language impairment;

    b. During the 2011-2012 and 2012-2013 school years, plaintiff, K.T-J attended Moody Middle School in Henrico County, Virginia;

    c. Defendant Raymond owed K.T.-J the duty to carry out the requirements of his IEP and supervise and care for him while he was at Moody;

d. During the 2011-2012 and 2012-2013 school years, defendant Raymond failed to properly ensure that administrators and educators adhered to K.T-J.'s IEP;

e. During the 2011-2012 and 2012-2013 school years, Defendant Raymond and other educators at Moody failed to provide K.T-J. appropriate and necessary accommodations as outlined in his IEP;

f. During the 2011-2012 school year, defendant Raymond and other administrators at Moody failed to follow the requirements of K.T-J's IEP when they changed his classroom setting, leaving him in the "sensory room" for long periods of time, rather than providing him with educational instruction as required by his IEP;

g. During the 2011-2012 school year, defendant Raymond and other administrators at Moody failed to follow federal law when they retained K.T-J in his current grade without a review of his IEP goals and assessments;

h. During the 2011-2012 and 2012-2013 school years, Raymond and other administrators at Moody failed to accept responsibility for the costs and expenses associated with necessary services for K.T.-J. as outlined in his IEP;

i. During the 2011-2012 school year, Raymond and other IEP team members, excluding Turton, failed to recommend private placement for K.T-J, who clearly met the requirements for such, when the school was unable to meet his educational needs in the least restrictive environment;

j. During the 2011-2012 school year, Raymond and other IEP team members, excluding Turton, failed to provide K.T-J with a free and appropriate public education, in that K.T-J was placed on homebound services and provided a teacher who failed to meet the teaching requirements of the homebound services contract; K.T-J was provided work to do without the benefit of assistance from the homebound services teacher; work assignments completed by K.T-J were lost, misplaced and/or destroyed by school officials without giving K.T-J credit for having completed the work;

k. During the 2011-2012 school year, defendant Raymond and other Moody administrators failed to follow proper procedure and ignored K.T-J's IEP and Behavioral Intervention Plan (BIP) when he was disciplined and ultimately suspended for engaging in behavior that was a direct result of his disability and the school officials failure to properly deal with the behavior;

l. Turton was contacted by school officials on one or more occasions to pick K.T-J up from school because of a disciplinary issue. Although plaintiff was advised that K.T-J was suspended and would have to leave and could not return to school, his records listed him as having been released early to parent or guardian, not as having been suspended.

m. During the 2011-2012 and 2012-2013 school years, school officials, at the direction of Andriano refused to provide Turton with K.T-J's evaluations and student records prior to IEP meetings. As a result, Turton was unable

to make fully informed decisions regarding K.T-J's educational and placement needs while participating in IEP meetings;

n.  During the 2011-2012 and 2012-2013 school years, defendant Raymond and other IEP team members conspired to deprive K.T-J. of his right to a free and appropriate public education in the least restrictive environment by developing IEP's showing K.T-J was meeting goals and/or exceeding goals outlined in the IEP based upon data collection by school officials, when, in fact, no such data existed, or the data which did exist did not substantiate the progress reports or suggested goal recommendations made by the IEP team;

o.  During the 2011-2012 and 2012-2013 school years, defendant Andriano created a hostile and combative environment for Turton during IEP meetings, so much so, that she felt bullied, harassed and excluded as a member of the IEP team;

p.  During the 2011-2012 and 2012-2013 school years, Andriano and Raymond conspired to deny Turton the advocate of her choosing, as dictated by IDEA, to assist with the development of K.T-J.'s IEP.

q.  During the 2011-2012 and 2012-2013 school years, defendant Raymond, and other members of the IEP team, excluding Turton, failed to provide K.T-J with an IEP that met the requirements of FAPE;

r.  During the 2011-2012 and 2012-2013 school years, negligently hired, failed to properly train, retained and supervised teachers who were not qualified to teach students with special needs.

## COUNT 9

### (Plaintiff A.M., Jr.)

70. Plaintiff herein incorporates by reference the above listed paragraphs;

71. The Plaintiffs, ALEXANDER MOTLEY, SR. AND SANDRA MOTLEY are residents of Henrico County, Virginia and the parents of A.M.,Jr, a school age child attending an Henrico County Public School, and who has a learning disability and is a handicapped individual as defined by federal and state laws.  At all times relevant to the allegations in this Complaint, A.M., Jr. was a student with an IEP;

   a.  A.M., Jr. is a student with a specific learning disability.  Specifically, he has a language based learning disability that primarily impacts his ability to develop, interpret and understand language based information;

   b.  During the 2011-2012 and 2012-2013 school years, plaintiff, A.M., Jr. attended Highland Springs High School in Henrico County, Virginia;

   c.  Defendant Wright owed A.M., Jr. the duty to carry out the requirements of his IEP and supervise and care for him while he was at Highland Springs;

   d.  During the 2011-2012 and 2012-2013 school years, defendant Wright failed to properly ensure that administrators and educators adhered to A.M., Jr.'s IEP;

   e.  During the 2011-2012 and 2012-2013 school years, defendant Wright and other educators at Highland Springs failed to provide A.M.,Jr. appropriate and necessary accommodations as outlined in his IEP, and as requested by his mother and father, Alexandra and Sandra Motley (hereinafter "The Motley's") and his treating therapists;

   f.  During the 2012-2013 school year, Defendant Wright and other administrators at Highland Springs failed to follow the requirements of

A.M.,Jr.'s IEP when they changed his classroom setting contrary to the
dictates of his IEP;

g. During the 2011-2012 and 2012-2013 school years, defendant Wright and
other administrators at Highland Springs failed to accept responsibility for
the costs and expenses associated with necessary services for A.M., Jr. as
outlined in his IEP;

h. During the 2011-2012 and 2012-2013 school years, school officials, at the
direction of Andriano refused to provide The Motleys with A.M.,Jr.'s
evaluations and student records prior to IEP meetings. As a result, The
Motleys were unable to make fully informed decisions about A.M.,Jr.'s
educational and placement needs while participating in IEP meetings;

i. During the 2011-2012 and 2012-2013 school years, Wright and other IEP
team members conspired to deprive A.M., Jr. of his right to a free and
appropriate public education in the least restrictive environment by
developing IEP's showing A.M., Jr. was meeting goals and/or exceeding
goals outlined in the IEP based upon data collection by school officials,
when, in fact, no such data existed, or the data which did exist did not
substantiate the progress reports or suggested goal recommendations made
by the IEP team;

j. During the 2011-2012 and 2012-2013 school years, defendant Wright, and
other members of the IEP team, excluding The Motleys failed to provide
A.M.,Jr. with an IEP that met the requirements of FAPE;

    k.  During the 2011-2012 and 2012-2013 school years, Wright negligently hired, failed to properly train, retained and supervised teachers who were not qualified to teach students with special needs.

**COUNT 10**

**(Plaintiff C.C.)**

72. Plaintiff herein incorporates by reference the above listed paragraphs;

73. The Plaintiff, SHARON CANNON is a resident of Henrico County, Virginia and the mother of C.C, a school age child, who previously attended an Henrico County Public School, and who has a learning disability and is a handicapped individual as defined by federal and state laws.  At all times relevant to the allegations in this Complaint, C.C. was a student with an IEP;

    a.  C.C. has been diagnosed with Autism, a developmental disability that significantly affects his verbal and nonverbal communication and social interaction.  In addition C.C. also has a secondary disability of speech or language impairment;

    b.  During the 2012-2013 school years, plaintiff, C.C. was home schooled;

    c.  Prior to the 2011-2012 school year, C.C. attended Moody Middle School in Henrico County, Virginia;

    d.  Defendant Raymond owed C.C. the duty to carry out the requirements of his IEP and supervise and care for him while he was at Moody;

    e.  After learning that C.C. had been bullied and harassed by defendant Raymond and other administrators, and that his IEP had not been adhered to at Moody during the 2010-2011 school year, plaintiff attempted to ensure that her son was safe and was not being singled out by defendant Raymond and other administrators, and that his IEP would be followed;

35

f.   When no assurances were forthcoming and a meeting with defendant Raymond was refused regarding the safety of C.C. at Moody, Cannon made arrangements to have C.C. home schooled pursuant to her right under Virginia's compulsory attendance laws;

g.   Thereafter, defendant Raymond forcibly withdrew Cannon from Moody;

h.   Defendant Raymond and other administrators at Moody than conspired to block every effort plaintiff Cannon made to have C.C. home schooled; Raymond and other Moody administrators, including Assistant Principal Ann Greene refused to provide plaintiff Cannon or her Parent Advocate with C.C.'s grades, his report card,  progress reports evidencing work completed prior to his being forcibly withdrawn from Moody, or any of his instructional materials;

i.   In addition, Henrico County school social workers, Rebekah Goehler and Jan Parrish refused to follow up with plaintiff's allegations of the bullying, neglect and abuse of C.C. by defendant Raymond, other administrators and students at Moody;

j.   When plaintiff Cannon refused to return her son due to the failure of Goehler and Parrish to investigate the abuse allegations, and Raymond's failure to respond to her concerns, Cannon filed a report with the Henrico County Police Department;

k.   Despite Cannon's concern for the safety of SPED student, Mehfoud instructed Raymond and other school administrators to pursue truancy charges against Cannon;

l.  During the 2010-2011 school year, Cannon attempted to comply with Virginia's compulsory education laws and re-enroll C.C.in school;

m.  Cannon contacted Douglas Wilder Middle School, (hereinafter "Wilder") which was her district school designation.  Wilder officials accepted C.C.'s enrollment and advised plaintiff Cannon to bring C.C. to Wilder the following week;

n.  Raymond sent an email to Wilder school officials advising that C.C. had to attend Moody and that he should not be allowed to attend Wilder. Raymond also sent a communication to Cannon threatening that if she took C.C. to Wilder she would be arrested for trespassing;

o.  Plaintiff Cannon refused to return C.C. to Moody,  and defendants Mehfoud and Raymond instigated additional criminal charges against Cannon;

p.  Despite a lack of evidence to the contrary of any violation of law by Cannon, and the subsequent dismissal of the charges, defendant Mehfoud continued to push for the prosecution of Cannon;

q.  While attending Moody, defendant Raymond and other educators at Moody failed to provide C.C. appropriate and necessary accommodations as outlined in his IEP;

r.  During the 2011-2012 school year, defendant Raymond and other administrators at Moody failed to follow federal law when they retained C.C. in his then current grade without a review of his IEP goals and assessments;

s.  During the 2011-2012 school year, defendant Raymond and other IEP team members, excluding Cannon, failed to recommend private placement for C.C., who clearly met the requirements for such, when the school was unable to meet his educational needs in the least restrictive environment;

t.  During the 2011-2012 and 2012-2013 school years, Raymond and other IEP team members, excluding Cannon, failed to provide C.C. with a free and appropriate public education, in that Cannon was forced to home school CC for his safety;

u.  During the 2011-2012 school year, school officials, at the direction of Mehfoud refused to provide Cannon with C.C.'s evaluations and student records prior to IEP meetings. As a result, Cannon was unable to make fully informed decisions about C.C.'s educational and placement needs while participating in IEP meetings;

v.  During the 2011-2012 school years, Mehfoud, Raymond and other IEP team members conspired to deprive C.C. of his right to a free and appropriate public education in the least restrictive environment by developing IEP's showing C.C. had not meet goals and/or benchmarks outlined in his IEP based upon school work completed by C.C. and data collection by school officials, when, in fact, no such data existed, or the data which did exist did not substantiate the progress reports or suggested goal recommendations made by the IEP team;

w. During the 2011-2012 and 2012-2013 school year, defendant Mehfoud
   created a hostile and combative environment for Cannon during IEP
   meetings, so much so, that Cannon felt bullied, harassed and excluded as
   a member of the IEP team;

x. During the 2011-2012 and 2012-2013 school years, defendants Mehfoud
   and Raymond conspired to deny Cannon the advocate of her choosing, as
   dictated by IDEA, to assist with the development of C.C.'s IEP;

y. During the 2011-2012 school year, Cannon was banned from Henrico
   School property indefinitely without the benefit of a due process hearing;

z. During the 2010-2011 school year, defendant Raymond approached
   Cannon in a physically threatening manner when she came to school to
   check on her son;  Cannon felt threatened and feared for her safety;

aa. During the 2011-2012 and 2012-2013 school years, Cannon felt so
   harassed and bullied that the stress of trying to ensure that C.C. received
   an appropriate IEP that met his educational needs in the least restrictive
   environment, that she became physically ill, and suffered a mild heart
   attack, which required her to be hospitalized and to lose time from work;

bb. During the 2011-2012 and 2012-2013 school years, defendant Raymond
   negligently hired, failed to properly train, retained and supervised
   teachers who were not qualified to teach students with special needs.

### COUNT 11

**(Plaintiff J.J.)**

74. Plaintiff herein incorporates by reference the above listed paragraphs;

75. The Plaintiff, KALISHA JEFFERSON (hereinafter "Jefferson") was a resident of Henrico County, Virginia at all times relevant to the allegations included in this Complaint, and is the mother of J.J. a school age child who previously attended an Henrico County Public School, and who has a learning disability and is a handicapped individual as defined by federal and state law.  At all times relevant to the allegations in this Complaint, J.J. was a student with an IEP;

    a.   J.J. has been diagnosed with Autism, a developmental disability that affects his verbal and nonverbal communication and  impacts his ability to develop, interpret and understand language based information;

    b.   During the 2011-2012 school year, plaintiff J.J. attended Varina High School in Henrico County, Virginia;

    c.   Defendant Omohundro owed J.J. the duty to carry out the requirements of his IEP and supervise and care for him while he was at Varina;

    d.   During the 2011-2012 school year, defendant Omohundro failed to provide J.J. with a free and appropriate public education in the least restrictive environment;

    e.   During the 2011-1012 school year, defendant Omohundro failed to provide adequate and/or appropriate staffing to meet J.J.'s special needs;

    f.   During the 2011-2012 and 2012-2013 school years, defendant Omohundro and other members of the IEP team, excluding Jefferson failed to provide

JJ with an IEP that met the requirements of FAPE; including, denying him appropriate and necessary accommodations;

g.  During the 2011-2012 school year, defendant Omohundro and other members of the IEP team failed to include Jefferson as a member of the IEP decision making team;

h.  During the 2011-2012 school year, Andriano advised Omohundro and other school officials to refuse Jefferson's requests for copies of J.J.'s grades, evaluations, student records, and/or student data prior to, or during IEP meetings, which adversely affected her ability to understand and participate in decisions regarding J.J.'s services and placement needs;

i.  During the 2011-2012 school year, Omohundro and other IEP team members conspired to deprive J.J. of his right to a free and appropriate public education in the least restrictive environment by developing IEP's showing J.J. was meeting goals and/or exceeding goals outlined in the IEP based upon data collection by school officials, when, in fact, no such data existed, or the data which did exist did not substantiate the progress reports or suggested goal recommendations made by the IEP team;

j.  During the 2011-2012 school year, Jefferson was banned from Henrico School property indefinitely without the benefit of a due process hearing in retaliation for her outspokenness regarding the school's failure to develop an appropriate IEP for her son, as well as to properly implement the IEP which was in place;

k. During the 2011-2012 school year, Andriano generally created a hostile and fearful environment for Jefferson, who expressed her concerns about the ongoing violations of federal law within the school system generally, and with regard to J.J. specifically;

l. Jefferson was not allowed to bring the advocate of her choosing to IEP meetings, as required under FAPE to assist with the development of a proper IEP for her child;

m. During the 2011-2012 school year, Andriano and the members of the IEP team, excluding Jefferson, conspired to deprive J.J. of appropriate educational services;

n. During the 2011-2012 school year, Omohundro and members of the IEP team failed to follow federal guidelines for meeting and changing J.J.'s placement;

o. During the 2011-2012 school year, Andriano advised Omohundro and other administrators to illegally withdraw J.J. from school in violation of federal guidelines and ignoring IEP requirements for disciplining, suspending and/or expelling SPED students;

p. Omohundro failed to protect J.J. from assault by another student when he was left without supervision and vulnerable to attack;

q. Given J.J.'s disability, it was reasonably foreseeable that he would be susceptible to injury from others if left without supervision.

## COUNT 12

### (Plaintiff B.I.)

76. Plaintiff herein incorporates by reference the above listed paragraphs;

77. The Plaintiff, JADA IBEKWE is a resident of Henrico County, Virginia and is the mother of B.I., a school age child attending an Henrico County Public School, who has a learning disability and is a handicapped individual as defined by federal and state laws.  At all times relevant to the allegations in this Complaint, B.I. was a student with an IEP;

   a. B.I. has been diagnosed with severe Autism, a developmental disability that significantly impedes his ability to learn.  B.I. also has a secondary disability of speech or language impairment and behavior disorder;

   b. During the 2011-2012 and 2012-2013 school years, plaintiff, B.I. attended Radcliffe Elementary School, in Henrico County, Virginia;

   c. Defendant Burkhalter owed B.I. the duty to carry out the requirements of his IEP and supervise and care for him while he was at Radcliffe;

   d. During the 2011-2012 and 2012-2013 school years, defendant Burkhalter failed to properly ensure that administrators and educators adhered to B.I.'s IEP;

   e. During the 2011-2012 and 2012-2013 school years, Defendant Burkhalter and other educators at Radcliffe failed to provide B.I. appropriate and necessary accommodations as outlined in his IEP;

   f. During the 2011-2012 and 2012-2013 school years, Burkhalter and other administrators at Radcliffe failed to accept responsibility for the costs and expenses associated with necessary services for B.I. as outlined in his IEP;

g. During the 2011-2012 and 2012-2013 school years, defendant Burkhalter and other IEP team members, excluding Ibekwe, failed to recommend private placement for B.I., who clearly met the requirements for such;

h. IEP team members, excluding Ibekwe, failed and continue to fail to provide B.I. with a free and appropriate public education, in that B.I. was forced to attend Virginia Randolph in a program wholly unsuited for his needs and dangerous because of his age and disability;

i. During the 2011-2012 and 2012-2013 school years, defendant Burkhalter and other Ratcliffe administrators failed to follow proper procedure and ignored B.I.'s IEP when he was disciplined and ultimately suspended for engaging in behavior that was a direct result of his disability and the school officials failure to properly deal with the behavior;

j. Ibekwe was contacted by school officials on one or more occasions to pick B.I. up from school because of a disciplinary issue. Although plaintiff was advised that B.I. was suspended and would have to leave and could not return to school, his records listed him as having been released early to parent or guardian, not as having been suspended;

k. During the 2011-2012 and 2012-2013 school years, defendant Burkhalter and other Ratcliffe school officials placed B.I. in classrooms with mainstream students without the benefit of an aide or teacher who was trained in dealing with his special needs. As a result, B.I.'s behavioral issues escalated and led to unwarranted suspensions which were not in compliance with his IEP and violated federal law;

44

l.  During the 2011-2012 and 2012-2013 school years, defendant Burkholter and other IEP team members failed to have a Manisfestation Hearing, or develop an adequate Behavioral Intervention Plan (BIP) needed one in order to benefit from a FAPE in the least restrictive environment;

m.  During the 2011-2012 and 2012-2013 school years, members of the school IEP team created a hostile and combative environment for Ibekwe during IEP meetings, so much so, that she felt bullied, harassed and excluded as a member of the IEP team;

n.  During the 2011-2012 and 2012-2013 school years, defendant Burkholter, and other members of the IEP team, excluding Ibekwe, failed to provide B.I. with an IEP that met the requirements of FAPE;

o.  During the 2011-2012 and 2012-2013 school years, Burkholter negligently hired, failed to properly train, retained and supervised teachers who were not qualified to teach students with special needs;

p.  During the 2013-2014 school year, B.I. was improperly, and illegally restrain by school officials who were not trained to deal appropriately with B.I.'s disability;

q.  As a result of the improper, illegal restraint, B.I. suffered from nightmares and was afraid to return to school.

## COUNT 13

### (Plaintiff L.T.)

78. Plaintiff herein incorporates by reference the above listed paragraphs;

79. The Plaintiff, LATRESCIA TIMMONS is a resident of Henrico County, Virginia and the mother of L.T., a school age child attending Henrico County Public Schools, and who has a learning disability and is a handicapped individual as defined by federal

and state laws. At all times relevant to the allegations in this Complaint, L.T. was a student with an IEP;

a. L.T. has been diagnosed with a learning disability that affects her cognitive, perceptual motor, and social adaptive skills;

b. During the 2011-2012 and 2012-2013 school years, L.T. attended Varina High School, in Henrico County, Virginia;

c. Defendant Omohundro owed L.T. the duty to carry out the requirements of her IEP and supervise and care for her while she was at Varina;

d. During the 2011-2012 school year, defendant Omohundro failed to provide L.T. with a free and appropriate public education in the least restrictive environment;

e. During the 2011-1012 and 2012-2013 school years, defendant Omohundro failed to provide adequate and/or appropriate staffing to meet L.T.'s special needs;

f. During the 2011-2012 and 2012-2013 school years, defendant Omohundro and other members of the IEP team, excluding Timmons failed to provide L.T. with an IEP that met the requirements of FAPE; including, denying her appropriate and necessary accommodations;

g. During the 2011-2012 and 2012-2013 school years, defendant Omohundro and other members of the IEP team failed to include Timmons as a member of the IEP decision making team;

h. During the 2011-2012 school year, defendants Andriano and/or Mehfoud advised Omohundro and other school officials to refuse Timmons' requests for copies of L.T.'s grades, evaluations, student records, and/or

46

student data prior to, or during IEP meetings, which adversely affected her ability to understand and participate in decisions regarding L.T.'s services and placement needs;

i.   During the 2011-2012 school year, Omohundro and members of the IEP team failed to follow federal guidelines for meeting and changing L.T.'s placement;

j.   During the 2011-2012 school year, defendants Andriano and/or Mehfoud advised Omohundro and other administrators to filed truancy charges against L.T. for excessive absences, without regard for her documented poor health which contributed to her absences, or her reluctance to attend school because she had been bullied and verbally abused throughout her tenure at Rolfe by defendant Kim Taylor, a teacher at Rolfe;

k.   Defendant Armstrong owed L.T. the duty to carry out the requirements of her IEP and supervise and care for her while she was at Rolfe ;

l.   While at Rolfe, despite numerous complaints to school officials regarding defendant Taylor's treatment of L.T., neither Rolfe officials, nor Henrico County school officials ever investigated the matter or disciplined Taylor regarding his abusive and disparate treatment of L.T because of her special needs;

m.  During her tenure at Rolfe, defendant Andrews allowed defendant Taylor to bully, harass and verbally abuse L.T. and other students;

n.   Given L.T.'s disability, it was reasonably foreseeable that she would be susceptible to bullying and abuse from others if left without proper supervision.

o. At Rolfe, defendant Armstrong negligently hired, failed to properly train, retained and supervised teachers who were not qualified to teach students with special needs.

## COUNT 14

### (Plaintiff M.M.)

80. Plaintiff herein incorporates by reference the above listed paragraphs;

81. The Plaintiff, Christy Miller is a resident of Henrico County, Virginia and the mother of M.M., a school age child attending Henrico County Public Schools, and who has a learning disability and is a handicapped individual as defined by federal and state laws. At all times relevant to the allegations in this Complaint, M.M. was a student with an IEP;

a. M.M. has been diagnosed with an emotional disability stemming from brain tumors which were discovered during the 2010-2011 school year. Following the removal of one of three tumors in his brain, M.M. developed problems with learning new information and remembering his daily activities. M.M.'s emotional issues are characterized by depression, anger, aggression and panic disorder with agoraphobia.

b. During the 2011-2012 and 2012-2013 school year, M.M. attended Varina High School in Henrico County, Virginia;

c. Defendant Omohundro owed M.M. the duty to carry out the requirements of his IEP and supervise and care for him while he was at Varina;

d. During the 2011-2012 and 2012-2013 school years, defendant Omohundro failed to provide M.M. with a free and appropriate public education in the least restrictive environment;

e. During the 2011-1012 school year, defendant Omohundro failed to provide adequate and/or appropriate staffing to meet M.M.'s special needs;

f. During the 2011-2012 and 2012-2013 school years, defendant Omohundro and other members of the IEP team, excluding Miller failed to provide M.M. with an IEP that met the requirements of FAPE; including, denying him appropriate and necessary accommodations and services;

g. During the 2011-2012 and 2012-2013 school year, defendant Omohundro and other members of the IEP team failed to include Miller as a member of the IEP decision making team;

h. During the 2011-2012 school year, Mehfoud and other members of the school legal team generally created a hostile and fearful environment for Miller, who expressed her concerns about the ongoing violations of federal law within the school system generally, and with regard to M.M. specifically;

i. During the 2011-2012 and 2012-2013 school years, there were significant periods of time when M.M. was unable to attend school and/or receive homebound services because of his brain surgery and subsequent follow up medical procedures.  In addition, during the 2012-2013 school year, M.M. developed severe panic disorder and agoraphobia issues;

j. During the 2012-2013 school year, despite Miller's efforts to contact the school on a regular basis regarding M.M.'s medical issues, school social worker, Jan Parrish, and attorneys for the school system filed and pursued

truancy charges against M.M. in Henrico County Juvenile and Domestic Relations Court in retaliation of Miller's outspoken opposition to the school's failure to properly follow her son's IEP, and her disagreement with school administrators "medical assessment" of M.M.'s abilities and needs;

k. During the 2012-2013 school year, Omohundro and the IEP team failed to develop an appropriate IEP plan to meet M.M.'s medical needs;

l. During the 2012-2013 school year, Omohundro and members of the IEP team failed to follow federal guidelines for meeting and changing M.M.'s placement;

m. During the 2011-2012 and 2012-2013 school years, Omohundro and other administrators failed to accept responsibility for the costs and expenses associated with necessary services for M.M. outlined in his IEP.

## COUNT 15

### (Plaintiff J.T.)

82. Plaintiff herein incorporates by reference the above listed paragraphs;

83. The Plaintiff, ANGELA TUCK is a resident of Henrico County, Virginia and the paternal aunt and legal guardian of J.T. a school age child attending Henrico County Public Schools, and who has a learning disability and is a handicapped individual as defined by federal and state laws. At all times relevant to the allegations in this Complaint, J.T. was a student with an IEP;

a. J.T. has been diagnosed with Asperger Syndrome, a developmental disability that

significantly affects his social skills, peer interaction and work study skills.  In

addition J.T. has been diagnosed with Attention Deficit Hyperactivity Disorder

("ADHA"), Oppositional Defiant Disorder, as well as Pathological

Demand Avoidance Syndrome ("PDA");

b.   During the 2011-2012 and 2012-2013 school years, plaintiff, J.T. attended Elko

Middle School in Henrico County, Virginia;

c.   Defendant Guempel owed J.T. the duty to carry out the requirements of his IEP

and supervise and care for him while he was at Elko;

d.   During the 2011-2012 and 2012-2013 school years, defendant Guempel

failed to properly ensure that administrators and educators adhered to

J.T.'s IEP;

e.   During the 2011-2012 and 2012-2013 school years, defendant Guempel

and other educators at Elko failed to provide J.T. appropriate and

necessary accommodations as outlined in his IEP;

f.   During the 2011-2012 and 2012-2013 school years, defendant Guempel

and other IEP team members failed to accept responsibility for the costs

and expenses associated with necessary services for J.T. as outlined in his

IEP.

g.   During the 2011-2012 school year, defendant Guempel and other IEP

team members, excluding Tuck failed to recommend private placement for

J.T., after it was recommended by a treating for psychologist, and when it

was clear that he  met the requirements for such;

h.   During the 2011-2012 and 2012-2013 school years, defendant Guempel

and other IEP team members failed to develop an adequate Behavioral

Intervention Plan (BIP) when it was clear that J.T. needed one in order to benefit from a FAPE in the least restrictive environment;

i. Tuck was contacted by school officials on one or more occasions to pick J.T. up from school because of a disciplinary issue. Although plaintiff was advised that J.T. was suspended and would have to leave and could not return to school, his records listed him as having been released early to parent or guardian, not as having been suspended;

j. During the 2011-2012 and 2012-2013 school years, school officials, at the direction of Mehfoud refused to provide Tuck with J.T.'s evaluations and student records prior to IEP meetings. As a result, Tuck was unable to make fully informed decisions regarding J.T.'s educational and placement needs while participating in IEP meetings;

k. During the 2011-2012 and 2012-2013 school years, Guempel and other IEP team members conspired to deprive J.T. of his right to a free and appropriate public education in the least restrictive environment by developing IEP's showing J.T. meeting goals and/or exceeding goals outlined in the IEP based upon data collection by school officials, when, in fact, no such data existed, or the data which did exist did not substantiate the progress reports or suggested goal recommendations made by the IEP team;

l. During the 2011-2012 and 2012-2013 school years, defendant Guempel, and other members of the IEP team, excluding Tuck, failed to provide J.T. with an IEP that met the requirements of FAPE.

## COUNT 16

### (Plaintiff K.T. Jr.)

84. Plaintiff herein incorporates by reference the above listed paragraphs;

85. The Plaintiff, SHARON TROTTER is a resident of Henrico County, Virginia and is

the mother of K.T., Jr., a school age child who attended Henrico County Public

Schools, and who has a learning disability and is a handicapped individual as defined

by federal and state laws.  At all times relevant to the allegations in this Complaint,

K.T. was a student with an IEP;

   a.  K.T.Jr. has been diagnosed with severe emotional disability, which results in self

   control issues, difficulty maintaining appropriate peer relations, and difficulty

   responding appropriately to adult redirection;

   b.  During the 2011-2012 school year, plaintiff, K.T., Jr. attended Highland Springs

   High School in Henrico County, Virginia;

   c.  Defendant Wright owed K.T.Jr. the duty to carry out the requirements of his IEP

   and supervise and care for him while he was at Highland Springs;

   d.  During the 2011-2012 school year, defendant Wright failed to properly

   ensure that administrators and educators adhered to K.T.Jr.'s IEP;

   e.  During the 2011-2012 school year, Defendant Wright and other educators

   at Highland Springs failed to provide K.T.Jr. appropriate and necessary

   accommodations as outlined in his IEP;

   f.  During the 2011-2012 school year, defendant Wright and other Highland

   Springs administrators failed to follow proper procedure and ignored

   K.T.Jr.'s IEP when he was disciplined and ultimately suspended for

engaging in behavior that was a direct result of his disability, as well as school officials failure to properly deal with the behavior;

g.   During the 2011-2012 school year, defendant Wright and other IEP team members failed to have a Manisfestation Hearing, or develop an adequate Behavioral Intervention Plan (BIP) despite the fact that K.T.Jr. needed one in order to benefit from a FAPE in the least restrictive environment;

h.   During the 2011-2012 school year, Wright and other school administrators called the Henrico County police to handle behavior issues of K.T.Jr,. which were related to his disability and which resulted from the school's lack of proper staffing to deal with his emotional issues, as well as the IEP team's failure to develop an appropriate BIP plan as part of K.T.Jr.'s IEP as directed by federal law;

i.   During the 2011-2012 school year, members of the school IEP team created a hostile and combative environment for Trotter during IEP meetings, so much so, that she felt bullied, harassed and excluded as a member of the IEP team;

j.   During the 2010-2011 and 2011-2012 school years, Trotter was banned from school property indefinitely without the benefit of a due process hearing;

k.   During the 2011-2012 school year, Wright, the other members of the IEP team, and the Henrico County Public School System failed to provide K.T.Jr., a FAPE in the least restrictive environment, and succeeded only in

pushing K.T.Jr., out of the doors of the Henrico County Public School System and into the prison system.

## COUNT 17

### (Plaintiff Kiawanna Trotter)

86. Plaintiff herein incorporates by reference the above listed paragraphs;

87. The Plaintiff, KIAWANNA TROTTER (hereinafter "K.Trotter") is a resident of Henrico County, Virginia and is an emancipated student attending a Henrico County Public School, and who has a learning disability and is a handicapped individual as defined by federal and state laws. At all times relevant to the allegations in this Complaint, Kiawanna Trotter was a student with an IEP;

88. SHARON TROTTER (hereinafter "Trotter") is also the mother of K. Trotter.

89. At all times relevant to this Complaint, and after K.Trotter's eighteenth birthday, Trotter had Power of Attorney for her daughter, which allowed her, among other things, to continue to handle her school/IEP matters;

    a. K.Trotter has been diagnosed with a severe emotional disability, which manifests itself in depression and anxiety which impact her learning, and maintaining appropriate peer relations, K.Trotter has also been diagnosed as having Bi-Polar Disorder;

    b. During the 2011-2012 school year, plaintiff, K.Trotter attended Highland Springs High School in Henrico County, Virginia;

    c. Defendant Wright owed K.Trotter the duty to carry out the requirements of his IEP and supervise and care for him while he was at Highland Springs;

    d. During the 2011-2012 and 2012-2013 school years, defendant Wright failed to properly ensure that administrators and educators adhered to K.Trotter's IEP;

e.  During the 2011-2012 and 2012-2013 school years, defendant Wright
    and other educators at Highland Springs failed to provide K.T.
    appropriate and necessary accommodations as outlined in her IEP;

f.  During the 2011-2012 and 2012-2013 school years, defendant Wright
    and the IEP team placed K.T. in the Excel Enrichment Academy
    (hereinafter "EEA") for behavior related problems;

g.  During the 2012-2013 school year, K.Trotter met all of the
    requirements to be returned to Henrico.  However, Wright and the IEP
    team members failed to review her progress and appropriately
    transition her back to Henrico to receive the services outlined in her
    IEP;

h.  During the 2012-1013 school year, despite status meetings, and many
    requests to meet as required by federal law and review and develop an
    appropriate IEP for K. Trotter, school officials failed to do so;

i.  During the 2011-2012 and 2012-2013 school years, Wright and other
    IEP team members conspired to deprive K.Trotter of her right to a free
    and appropriate public education in the least restrictive environment
    by implying that there was documentation showing that K. Trotter was
    meeting goals and/or exceeding IEP goals at EEA based upon data
    collection by school officials, when, in fact, no such data existed, or
    the data which did exist did not substantiate the progress reports or
    suggested goal recommendations made by the IEP team;

j.  During the 2011-2012, 2012-2013 and current school years, members of the school IEP team created a hostile and combative environment for Trotter during IEP meetings, so much so, that she felt bullied, harassed and excluded as a member of the IEP team;

k.  During the 2010-2011 and 2011-2012 school years, Trotter was banned from school property indefinitely without the benefit of a due process hearing;

l.  During the 2011-2012 school year, Wright, the other members of the IEP team, and the Henrico County Public School System failed to provide K.Trotter, a FAPE in the least restrictive environment;

m.  During the 2012-2013 school year, Wright and other Henrico administrators un-enrolled K. Trotter in school in violation of her current IEP, and failed to meet with Trotter and K. Trotter to develop and updated, appropriate IEP despite many requests by Trotter.

## COUNT 18

### (Plaintiff S.A.M.)

90. Plaintiff herein incorporates by reference the above listed paragraphs;

91. The Plaintiff, BRANDY MILLER-GREEN (hereinafter "Miller-Green") is a resident of Henrico County, Virginia and the mother of S.A.M., a school age child attending a Henrico County Public School, and who has a learning disability and is a handicapped individual as defined by federal and state laws. At all times relevant to the allegations in this Complaint, S.A.M. was a student with an IEP;

a.  S.A.M. is a student who has been diagnosed with ADHD;

b. During the 2011-2012 and 2012-2013 school years, plaintiff, S.A.M., Jr. attended Moody Middle School in Henrico County, Virginia;

c. Defendant Raymond owed S.A.M. the duty to carry out the requirements of his IEP and supervise and care for him while he was at Moody;

d. During the 2011-2012 and 2012-2013 school years, defendant Raymond failed to properly ensure that administrators and educators adhered to S.A.M.'s IEP;

e. During the 2011-2012 and 2012-2013 school years, defendant Raymond and other educators at Moody failed to provide S.A.M. appropriate and necessary accommodations as outlined in his IEP;

f. During the 2011-2012 and 2012-2013 school years, defendant Raymond, and other members of the IEP team, excluding Miller-Green failed to provide S.A.M. with an IEP that met the requirements of FAPE;

g. During the 2011-2012 and 2012-2013 school years, defendant Raymond negligently hired, failed to properly train, retained and supervised teachers who were not qualified to teach students with special needs.

## COUNT 19

### (Plaintiff T.M.)

92. Plaintiff herein incorporates by reference the above listed paragraphs;

93. The Plaintiffs, PATTI AND PAUL MOSS (hereinafter "The Moss's"), are residents of Henrico County, Virginia and the parents of T.M., a school age child attending Henrico County Public Schools, and who has a learning disability and is a handicapped individual as defined by federal and state laws. At all times relevant to the allegations in this Complaint, T.M. was a student with an IEP;

a. T.M. is a student who has been diagnosed with autism;

b. During the 2011-2012 and 2012-2013 school years, plaintiff, T.M. attended Moody Middle School in Henrico County, Virginia;

c. Defendant Raymond owed T.M. the duty to carry out the requirements of his IEP and supervise and care for him while he was at Moody;

d. During the 2011-2012 and 2012-2013 school years, defendant Raymond failed to properly ensure that administrators and educators adhered to T.M.'s IEP;

e. During the 2011-2012 and 2012-2013 school years, defendant Raymond and other members of the IEP team, excluding The Moss's failed to provide T.M. with an IEP that met the requirements of FAPE; including, denying him appropriate and necessary accommodations;

f. During the 2011-2012 school year, defendant Raymond and other members of the IEP team failed to include The Moss's as members of the IEP decision making team;

g. During the 2011-2012 school year, Raymond and other members of the IEP team misrepresented to The Moss's that IEP team decisions regarding T.M.'s needs and progress were dictated by data that was never collected in accordance with IEP requirements, or the data which did exist, did not support the recommendations made by the IEP team;

h. During the 2011-2012 and 2012-2013 school years, defendant Raymond and other educators at Moody failed to provide T.M. appropriate and necessary accommodations as outlined in his IEP;

i.  During the 2011-2012 and 2012-2013 school years, defendant
    Raymond, and other members of the IEP team, excluding The Moss's
    failed to provide T.M. with an IEP that met the requirements of FAPE;

j.  During the 2011-2012, 2012-2013 and current school years, members
    of the school IEP team created a hostile and combative environment
    for The Moss's during IEP meetings, so much so, that they felt bullied,
    harassed and excluded as members of the IEP team;

k.  During the 2011-2012 and 2012-2013 school years, school officials
    refused to provide the Moss' with T.M.'s evaluations and student
    records prior to IEP meetings.  As a result, The Moss's were unable to
    make fully informed decisions regarding T.M.'s educational and
    placement needs while participating in IEP meetings.

l.  Defendant Raymond and other administrators at Moody had an
    obligation to protect T.M. from harm by other students.

m.  Defendant Raymond and other administrators at Moody failed to
    protect T.M. from other students, who bullied, harassed and verbally
    abused T.M. without intervention or correction, despite notification by
    The Moss's of this ongoing conduct;

n.  Given T.M.'s disability, it was reasonably foreseeable that he would
    be susceptible to injuries and abuse from others if left without
    supervision;

o.  During the 2011-2012 and 2012-2013 school years, defendant
    Raymond negligently hired, failed to properly train, retained and

supervised teachers who were not qualified to teach students with special needs.

### COUNT 20

#### (Plaintiff S.M.)

94. Plaintiff herein incorporates by reference the above listed paragraphs;

95. The Plaintiffs, PATTI  AND PAUL MOSS (hereinafter "The Moss's"), are residents of Henrico County, Virginia and the parents of S.M., a school age child attending an Henrico County Public School, and who has a learning disability and is a handicapped individual as defined by federal and state laws.  At all times relevant to the allegations in this Complaint, S.M. was a student with an IEP;

    a.  S.M. is a student who hearing impaired;

    b.  During the 2011-2012 and 2012-2013 school years, plaintiff, S.M. attended Moody Middle School in Henrico County, Virginia;

    c.  Defendant Raymond owed S.M. the duty to carry out the requirements of his IEP and supervise and care for him while he was at Moody;

    d.  During the 2011-2012 and 2012-2013 school years, defendant Raymond failed to properly ensure that administrators and educators adhered to S.M.'s IEP;

    e.  During the 2011-2012 and 2012-2013 school years, defendant Raymond and other members of the IEP team, excluding The Moss's failed to provide S.M. with an IEP that met the requirements of FAPE; including, denying him appropriate and necessary accommodations;

f.  During the 2011-2012 school year, defendant Raymond and other members of the IEP team failed to include The Moss's as members of the IEP decision making team;

g.  During the 2011-2012 school year, Raymond and other members of the IEP team misrepresented to Moss that IEP team decisions regarding S.M.'s needs and progress were dictated by data that was never collected in accordance with IEP requirements, or the data which did exist, did not support the recommendations made by the IEP team;

h.  During the 2011-2012 and 2012-2013 school years, defendant Raymond and other educators at Moody failed to provide S.M. appropriate and necessary accommodations as outlined in his IEP;

i.  During the 2011-2012 and 2012-2013 school years, defendant Raymond, and other members of the IEP team, excluding The Moss's failed to provide S.M. with an IEP that met the requirements of FAPE;

j.  During the 2011-2012, 2012-2013 and current school years, members of the school IEP team created a hostile and combative environment for The Moss's during IEP meetings, so much so, that they felt bullied, harassed and excluded as members of the IEP team;

k.  During the 2011-2012 and 2012-2013 school years, school officials refused to provide the Moss's with T.M.'s evaluations and student records prior to IEP meetings.  As a result, The Moss' were unable to make fully informed decisions regarding T.M.'s educational and placement needs while participating in IEP meetings;

l.  Defendant Raymond and other administrators at Moody had an obligation to protect S.M. from harm by other students;

m.  Defendant Raymond and other administrators at Moody failed to protect S.M. from other students, who bullied, harassed and verbally abused S.M. without intervention or correction, despite notification by The Moss's of this ongoing conduct;

n.  Given S.M.'s disability, it was reasonably foreseeable that he would be susceptible to injuries and abuse from others if left without supervision;

o.  During the 2011-2012 and 2012-2013 school years, defendant Raymond negligently hired, failed to properly train, retained and supervised teachers who were not qualified to teach students with special needs.

## COUNT 21

### (Plaintiff P.M.)

98.  Plaintiff herein incorporates by reference the above listed paragraphs;

99.  The Plaintiff, SHANNON TAYLOR MORRIS (hereinafter "Morris"), is a resident of Henrico County, Virginia and the mother of P.M., a school age child attending an Henrico County Public School, and who has a learning disability and is a handicapped individual as defined by federal and state laws.  At all times relevant to the allegations in this Complainant, P.M. was a student with an IEP;

a.  P.M. has been diagnosed with a severe emotional disability, which results in self control issues, difficulty maintaining appropriate peer relations, and difficulty responding appropriately to adult redirection;

b.  During the 2011-2012 and 2012-2013 school years, plaintiff, P.M. attended Sandston Elementary School in Henrico County, Virginia;

c.   Defendant Seamster owed P.M. the duty to carry out the requirements of his IEP and supervise and care for him while he was at Sandston;

d.   During the 2011-2012 and 2012-2013 school years, defendant Seamster failed to properly ensure that administrators and educators adhered to P.M.'s IEP;

e.   During the 2011-2012 school year, defendant Seamster and other educators at Sandston failed to provide P.M. appropriate and necessary accommodations as outlined in his IEP;

f.   During the 2011-2012 school year, defendant Seamster and other administrators failed to follow proper procedure and ignored P.M.'s IEP when he was disciplined and ultimately suspended for engaging in behavior that was a direct result of his disability, as well as school officials failure to properly deal with the behavior;

g.   Morris was contacted by school officials on one or more occasions to pick P.M. up from school because of a disciplinary issue.  Although plaintiff was advised that P.M. was suspended and would have to leave and could not return to school, his records listed him as having been released early to parent or guardian, not as having been suspended;

h.   During the 2011-2012 school year, defendant Seamster and other IEP team members failed to have a Manisfestation Hearing, or develop an adequate Behavioral Intervention Plan (BIP) despite the fact that P.M. needed one in order to benefit from a FAPE in the least restrictive environment;

i.   During the 2011-2012 school year, Seamster and other school administrators called the Henrico County police to handle behavior issues of P.M. which were related to his disability and which resulted from the school's lack of

64

proper staffing to deal with his emotional issues, as well as the IEP team's

failure to develop an appropriate BIP plan as part of P.M.'s IEP as directed by

federal law;

j.  During the 2011-2012 school year, members of the school IEP team created a

hostile and combative environment for Morris during IEP meetings, so much

so, that she felt bullied, harassed and excluded as a member of the IEP team;

k.  During the 2011-2012 and 2012-2013 school years, Morris felt so harassed

and bullied that the stress of trying to ensure that P.M. received an appropriate

IEP that met his educational needs in the least restrictive environment, that

she became physically ill, and was removed from work and placed on short

term disability by her doctor to avoid her suffering a nervous breakdown;

l.  During the 2011-2012 school year, P.M. was locked in a classroom as

discipline for a disability related emotional outburst;

m.  After being locked in the small room for several hours, P.M.'s behavior

escalated and in a panic caused by his disability attempted to leave the room

several times.  P.M. was then assaulted by Seamster and other administrators

who inappropriately restrained him to keep him from leaving the room;

n.  As a result of the inappropriate physical restraint by Seamster and other

administrators at Seamster's direction, P.M. developed bruises on his head,

arms, legs and upper torso;

o.  Defendant Seamster and other administrators at Sandston failed to protect

P.M. from harm;

p.  Given P.M.'s disability, it was reasonably foreseeable that he would be susceptible to injuries and abuse from others if left without supervision.

## COUNT 22

### (Plaintiff Demetris Vega)

100.  Plaintiff herein incorporates by reference the above listed paragraphs;

101.  The Plaintiff, DEMETRIS VEGA (hereinafter "D. Vega")  is a resident of Henrico County, Virginia and is an emancipated student attending a Henrico County Public School, and who has a learning disability and is a handicapped individual as defined by federal and state laws. At all times relevant to the allegations in this Complaint, Vega was a student with an IEP;

102.  The Plaintiff, ZOLANDRIA VEGA, is a resident of Henrico County, Virginia and is the mother of, and the Power of Attorney for her emancipated disabled son, Demetrius Vega, a student attending Henrico County Public Schools;

a.  D. Vega is a student who has been diagnosed with autism;

b.  During the 2011-2012 school year, plaintiff D. Vega attended Hermitage High School in Henrico County, Virginia;

c.  During the 2012-2013 school year, plaintiff, D. Vega attended The Faison School in Henrico County, Virginia;

d.  Defendant Armstrong owed D.Vega the duty to carry out the requirements of his IEP and supervise and care for him while he was at Hermitage;

e.  During the 2011-2012 school year, defendant Armstrong failed to properly ensure that administrators and educators adhered to D.Vega's IEP;

f.  During the 2011-2012 and 2012-2013 school years, Defendant Armstrong and other educators at Hermitage failed to provide D. Vega appropriate and necessary accommodations as outlined in his IEP;

g. During the 2011-2012 and 2012-2013 school years, defendant Armstrong and other members of the IEP team, excluding Vega failed to provide D.Vega with an IEP that met the requirements of FAPE;

## COUNT 23

### (Plaintiff S.C.)

103.     Plaintiff herein incorporates by reference the above listed paragraphs;

104.     The Plaintiff, LESLEY ANNE MATTHEWS (hereinafter "Matthews") is a resident of Henrico County, Virginia and the mother of SC., a school age child attending an Henrico County Public School, and who has a learning disability and is a handicapped individual as defined by federal and state laws.  At all times relevant to the allegations in this Complaint, S.A.M. was a student with an IEP;

a. S.C. is a student who has been diagnosed with Autism, which results in his being extremely distractable with difficulty completing work independently and in groups, and which results in difficulty relating to peers;

b. During the 2011-2012 and 2012-2013 school years, plaintiff, S.C. attended Crestview Elementary School in Henrico County, Virginia;

c. Defendant Rawlyk owed S.C. the duty to carry out the requirements of his IEP and supervise and care for him while he was at Crestview;

d. During the 2011-2012 and 2012-2013 school years, defendant Rawlyk failed to properly ensure that administrators and educators adhered to S.C's IEP;

e. During the 2011-2012 and 2012-2013 school years, defendant Rawlyk and other educators at Crestview failed to provide S.C. appropriate and necessary accommodations as outlined in his IEP;

    f.  During the 2011-2012 and 2012-2013 school years, Rawlyk and members of the IEP team failed to follow federal guidelines for meeting and changing S.C's placement;

    g.  During the 2011-2012 and 2012-2013 school years, defendant Rawlyk, and other members of the IEP team, excluding Matthews failed to provide S.C. with an IEP that met the requirements of FAPE;

## COUNT 24

### (Plaintiff E.G.)

105.    Plaintiff herein incorporates by reference the above listed paragraphs;

106.    HEATHER AND OSCAR GONZALEZ (hereinafter "the Gonzalez's"), are residents of Chesterfield County, Virginia and the parents of E.G., a school age child attending Chesterfield County Public Schools, and who has a learning disability and is a handicapped individual as defined by federal and state laws. At all times relevant to the allegations in this Complaint, E.G. was a student who met the criteria for evaluation for an IEP, and who was eventually a student with an IEP;

    a.  E.G. has been diagnosed with severe Autism, a developmental disability that significantly affects his ability to learn. E.G. also has a secondary disability of speech or language impairment and behavior disorder;

    b.  During the 2010-2011 and 2011-2012 school years, plaintiff, E.G. attended Salem Church Elementary School in Chesterfield County, Virginia;

    c.  Defendant Lewellyn owed E.G. the duty to carry out the requirements of his IEP and supervise and care for him while he was at Salem;

    d.  During the 2010-2011 and 2011-2012 school years, defendant Lewellyn failed to properly ensure that administrators and educators adhered to E.G's IEP;

e. During the 2010-2011 and 2011-2012 school years, Defendant Lewellyn and
other educators at Salem failed to provide E.G. appropriate and necessary
accommodations as outlined in his IEP;

f. During the 2010-2011 and 2011-2012 school years, Lewellyn and other
administrators at Salem failed to accept responsibility for the costs and
expenses associated with necessary services for E.G. as outlined in his IEP;

g. During the 2010-2011 and 2011-2012 school years, Lewellyn and other IEP
team members, excluding the Gonzalez's, failed to recommend alternative
placement for E.G. who clearly met the requirements for such, as the public
school placement was unable to meet his needs;

h. During the 2010-2011 and 2011-2012 school years, defendant Lewellyn and
other Salem administrators failed to follow proper procedure and ignored
E.G.'s IEP when he was disciplined and ultimately suspended for engaging in
behavior that was a direct result of his disability and the school officials
failure to properly deal with the behavior;

i. The Gonzalez's were contacted by school officials on one or more occasions
to pick E.G. up from school because of a disciplinary issue. Although
plaintiff was advised that E.G. was suspended and would have to leave and
could not return to school, his records listed him as having been released early
to parent or guardian, not as having been suspended;

j. During the 2010-2011 and 2011-2012 school years, Lewellyn and other Salem
school officials placed E.G. in classrooms with mainstream students without
the benefit of an aide or teacher who was trained in dealing with his special

needs.  As a result, E.G.'s behavioral issues escalated and led to unwarranted suspensions which were not in compliance with his IEP, and which violated federal law;

k.  During the 2010-2011 and 2011-2012 school years, defendant Lewellyn and other IEP team members failed to have a Manisfestation Hearing, or develop an adequate Behavioral Intervention Plan (BIP) when it was clear E.G. needed one in order to benefit from a FAPE in the least restrictive environment;

l.  During the 2010-2011 and 2011-2012 school years, members of the school IEP team created a hostile and combative environment for the Gonzalez's during IEP meetings, so much so, that they felt bullied, harassed, excluded and confused as members of the IEP team;

m.  During the 2011-2012 school year, Mehfoud and Lewellyn conspired to deny the Gonzalez's the advocate of their choosing, as dictated by IDEA, to assist with the development of E.G.'s IEP, particularly when it was necessary, given the language barrier of the Gonzalez's;

n.  During the 2010-2011 and 2011-2012 school years, defendant Lewellyn, and other members of the IEP team, excluding the Gonzalez's, failed to provide E.G. with an IEP that met the requirements of FAPE;

o.  During the 2010-2011 and 2011-2012 school years, defendant Lewellyn negligently hired, failed to properly train, retained and supervised teachers who were not qualified to teach students with special needs;

p.  During the 2011-2012 school year, E.G.. was improperly, and illegally restrain by school officials who were not trained to deal appropriately with E.G.'s disability;

q.  As a result of the improper, illegal restraint, E.G. was afraid to return to school.

## COUNT 25

### (Plaintiff B.C.)

107.     Plaintiff herein incorporates by reference the above listed paragraphs;

108.     The Plaintiff's, BRIAN AND MARIA COPPLE, are residents of Chesterfield County, Virginia, and are the parents of B.C., a school age child attending Chesterfield County Public Schools, and who has a learning disability and is a handicapped individual as defined by federal and state law.  At all times relevant to the allegations in this Complaint, B.C. was a student with an IEP;

    a.  B.C. has been diagnosed with Autism, a developmental disability that significantly affects his verbal and nonverbal communication and social interaction.  In addition, B.C. also has a secondary disability of speech or language impairment;

    b.  During the 2011-2012 school years, plaintiff, B.C. attended A.M. Davis Elementary School in Chesterfield County, Virginia;

    c.  During the 2012-2013 school year, B.C. attended the Dominion School for Autism;

    d.  Defendant Foglesong owed B.C. the duty to carry out the requirements of his IEP and supervise and care for him while he was at Davis;

    e.  During the 2011-2012 school years, defendant Foglesong failed to properly ensure that administrators and educators adhered to B.C.'s IEP;

    f.  During the 2011-2012 school years, defendant Foglesong and other educators at Davis failed to provide B.C. appropriate and necessary accommodations as outlined in his IEP;

    g.  During the 2011-2012 and 2012-2013 school years, Foglesong and other administrators at Davis failed to accept responsibility for the costs and expenses associated with necessary services for B.C. as outlined in his IEP;

h.  During the 2011-2012 school year, Foglesong and other IEP team members, excluding the Copples, failed to recommend private placement for B.C. who clearly met the requirements for such when the school was unable to meet his educational needs in the least restrictive environment;

i.  During the 2011-2012 school year, the Copples personally paid for B.C. to attend the Dominion School for Autism;

j.  During the 2011-2012 and 2012-2013 school years, school officials, at the direction of Andriano refused to provide The Copples with B.C.'s evaluations and student records prior to IEP meetings.  As a result, the Copples were unable to make fully informed decisions regarding B.C.'s educational and placement needs while participating in IEP meetings;

k.  During the 2011-2012 and 2012-2013 school years, Foglesong and other IEP team members conspired to deprive B.C. of his right to a free and appropriate public education in the least restrictive environment by developing IEP's showing B.C. was meeting goals and/or exceeding goals outlined in the IEP based upon data collection by school officials, when, in fact, no such data existed, or the data which did exist did not substantiate the progress reports or suggested goal recommendations made by the IEP team;

l.  During the 2011-2012 and 2012-2013 school years, defendant Andriano created a hostile and combative environment for the Copples during IEP meetings, so much so, that they felt bullied, harassed and excluded as members of the IEP team;

m.  During the 2011-2012 and 2012-2013 school years, defendant Foglesong, and other members of the IEP team, excluding the Copples, failed to provide B.C. with an IEP that met the requirements of FAPE;

n.  During the 2011-2012 school year, defendant Foglesong negligently hired, failed to properly train, retained and supervised teachers who were not qualified to teach students with special needs;

o.  During the 2011-2012 school year, a teacher at Davis inappropriately and illegally videotaped B.C. while he was using the restroom.

p.  Defendant Foglesong and other administrators at Davis failed to protect B.C. from this type of abuse by a teacher;

q.  Given B.C.'s disability, it was reasonably foreseeable that he would be susceptible to injuries and abuse from others if left without supervision.

## COUNT 26

### (Plaintiff J.D.)

109.    Plaintiff herein incorporates by reference the above listed paragraphs;

110.    MELISSA AND GENE DESIMONE, are residents of Chesterfield County, Virginia, and are the parents of J.D., a school age child who previously attended Chesterfield County Public Schools, and who has a learning disability and is a handicapped individual as defined by federal and state laws.  At all times relevant to the allegations in this Complaint, J.D. was a student with an IEP;

a.  J.D. has been diagnosed with Autism, a developmental disability that significantly affects his ability to learn;

b.  During the 2009-2010 school year and part of the 2010-2011 school year, plaintiff, J.D. attended Swift Creek Middle School in Chesterfield County, Virginia;

c. During part of the 2010-2011 and continuing into the 2013-2014 school years, J.D. attended the Dominion School for Autism;

d. Defendant Robinson owed J.D. the duty to carry out the requirements of his IEP and supervise and care for him while he was at Swift Creek;

e. During the 2009-2010 and a portion of the 2010-2011 school year, defendant, Robinson failed to properly ensure that administrators and educators adhered to J.D.'s IEP;

f. During the 2009-2010 and 2010-2011 school years, defendant Robinson and other educators at Swift Creek failed to provide J.D. appropriate and necessary accommodations as outlined in his IEP;

g. During the 2009-2010 and 2010-2011 school years, Robinson and the IEP team failed to accept responsibility for the costs and expenses associated with necessary services for J.D. as outlined in his IEP;

h. During the 2010-2011 and subsequent school years, through 2013-2014, Robinson and other IEP team members, excluding the DiSimones, failed to recommend private placement for J.D. who clearly met the requirements for such when the public school was unable to meet his educational needs in the least restrictive environment;

i. Since the 2010-2011 school year, the DiSimones have personally paid for J.D. to attend the Dominion School for Autism in order to meet his special educational needs;

j. During the 2010-2011 school year, school officials refused to provide The DiSimones with J.D.s evaluations and student records prior to IEP meetings. As a result, the DiSimones were unable to make fully informed decisions

74

regarding J.D.'s educational and placement needs while participating in IEP meetings;

k. During the 2010-2011 school year, Robinson and other IEP team members conspired to deprive J.D. of his right to a free and appropriate public education in the least restrictive environment by advising the DiSimones that they could not provide J.D.'s school records to them because they had been accidently shredded;

l. During the 2009-2010 and 2010-2011 school years, defendant Robinson, and other members of the IEP team, excluding the DiSimones, failed to provide J.D. with an IEP that met the requirements of FAPE;

## COUNT 27
### (Plaintiff T.T.)

111.    Plaintiff herein incorporates by reference the above listed paragraphs;

112.    The Plaintiff's ASHLEY AND STEVE BRACKBILL, are residents of Essex County, Virginia, and the parents of T.T, a school age child attending Essex County Public Schools, and who has a learning disability and is a handicapped individual as defined by federal and state laws. At all times relevant to the allegations in this Complaint, T.T. was a student with an IEP;

a. T.T. is a student who has been diagnosed with other health impairment characterized by learning and emotional disabilities which significantly affect her ability to learn and causes her extreme anxiety. She also has a secondary disability of enuresis which is triggered by her emotional anxiety;

b. During the 2011-2012 and 2012-2013 school years, plaintiff, T.T. attended Essex Intermediate School in Essex, Virginia;

c.  Defendant Roane owed T.T. the duty to carry out the requirements of his IEP and supervise and care for him while he was at Essex;

d.  During the 2011-2012 and 2012-2013 school years, defendant Roane failed to properly ensure that administrators and educators adhered to T.T.'s IEP;

e.  During the 2011-2012 and 2012-2013 school years, defendant Roane and other educators at Essex failed to provide T.T. appropriate and necessary accommodations as outlined in her IEP;

f.  Defendant Roane and other administrators at Essex had an obligation to protect T.T. from harm by other students and teachers.

g.  Roane and other administrators failed to protect T.T. from bullying and verbal abuse by other Essex students.  The defendants did not intervene or correct the conduct despite notification by The Brackbills regarding the conduct.

h.  During the 2011-2012 school year, T.T. was harassed and taunted by teachers Reynolds and Payne who refused to adhere to T.T.'s IEP accommodations regarding liberal restroom use.  After denying T.T. access to the restroom, Reynolds and Payne forced T.T. to remain standing in the classroom in urine soaked clothing until the class ended.  This egregious conduct, lead to additional teasing, taunting and bullying of T.T. by the other students.

i.  Given T.T.'s disability, it was reasonably foreseeable that she would be susceptible to bullying and abuse from others if left without proper supervision.

j.  T.T. has suffered severe emotional distress and humiliation as a result of the teacher's refusal to allow her to go to the restroom, or change her clothes following her accident.

k. During the 2011-2012 school year, defendant Roane negligently hired, failed to properly train, retained and supervised teachers who were not qualified to teach students with special needs.

## COUNT 28

### (Plaintiff Douglas "Dooley" Davis, Jr.)

113.    Plaintiff herein incorporates by reference the above listed paragraphs;

114.    The Plaintiff, TONIA B. DAVIS (hereinafter "Davis"), is a resident of Nottoway County, Virginia and is the mother of and Power of Attorney for her emancipated disabled son, Douglas "Dooley" Davis (hereinafter "Dooley"), a student attending Nottoway County Public Schools, and who has a learning disability and is a handicapped individual as defined by federal and state laws. At all times relevant to the allegations in this Complaint, Dooley was a student with an IEP;

a. Dooley is a student who has been diagnosed with autism. He is largely non-verbal.

b. During the 2011-2012 school year, Dooley was attending Nottoway County High School in Nottoway County, Virginia, pursuant to an extended education plan outlined in his IEP;

c. Defendant Stinson owed Dooley the duty to carry out the requirements of his IEP and supervise and care for him while he was at Nottoway;

d. During the 2011-2012 and 2012-2013 school years, defendant Stinson failed to properly ensure that administrators and educators adhered to Dooley's IEP;

e. During the 2011-2012 and 2012-2013 school years, defendant Stinson and other educators at Nottoway failed to provide Dooley appropriate and necessary accommodations as outlined in his IEP;

77

f.  During the 2011-2012 school year, defendant Stinson failed to protect Dooley from harm by his teacher, defendant Hines, who verbally and physically assaulted Dooley while locking him alone in a dark classroom.

g.  Given Dooley's disability, it was reasonably foreseeable that he would be susceptible to bullying and abuse from others if left without proper supervision.

h.  Dooley has suffered severe emotional distress as a result of being locked in a dark classroom alone by Hines.  In addition, Dooley's anxiety over the incident manifested itself in hand biting and nervous twitching.

i.  Dooley exhibited extreme distress and anxiety about returning to school for several months following the incident with Hines;

j.  During the 2011-2012 school year, defendant Stinson negligently hired, failed to properly train, retained and supervised teachers who were not qualified to teach students with special needs.

WHEREFORE, the plaintiffs move this Court for Injunctive Relief; an Order requiring the defendant's to comply with Federal law regarding the Individuals with Disability Act (IDEA), and it's corresponding federal and state regulations and policies, and the Regulations Governing Special Education Programs for Children with Disabilities in Virginia; an award in the amount of twenty million dollars (20,000,000) in compensatory and punitive damages; plus attorney's fees, costs of suit, and such other and further relief as this Court may deem just and proper.

**A TRIAL BY JURY IS DEMANDED**

**NOIRE TURTON, ET AL.**

By: _Charlotte P. Hodge_

Charlotte Peoples Hodges, Esquire
VSB #41547
**B.I.G. Legal Services**
P.O. Box 4302
Midlothian, Virginia 23112
(804) 475-5484 (phone)
(804) 482-2479 (fax)
Biglegal10@verizon.net

*Counsel for Plaintiffs*